**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| Jeanne Llera, et al., | Case No. 2:20-cv-01589-RFB-BNW |
| Plaintiffs, | |
| v. | **ORDER** |
| Las Vegas Metropolitan Police Department, et al., | |
| Defendants. | |

Before the Court is the issue of whether a certain police report is protected by the deliberative process privilege. The parties previously requested an informal discovery conference, which the Court held. *See* ECF Nos. 28, 37. At the informal conference, the Court ordered additional briefing on the issue, which the parties submitted. *See* ECF Nos. 37-41. The Court held an additional hearing on the briefing and took the matter under submission. ECF No. 42.

**I.    Background**

This is a Section 1983 lawsuit. Plaintiffs allege that on June 1, 2020, Defendants used excessive force when they shot and killed Jorge Gomez, Jr. outside of the Lloyd D. George Courthouse. ECF No. 33 (joint statement regarding the parties' discovery dispute). Gomez was participating in a Black Lives Matter protest in the wake of George Floyd's death. *See id.*

During discovery, Defendants identified that a Critical Incident Review Team (CIRT) Administrative Report (CIRT report) existed but was being withheld under the deliberative process privilege. *Id.* at 2-3. The issue before the Court is whether the CIRT report is properly being withheld under this privilege or whether it should be disclosed to Plaintiffs. *See* ECF No. 33, 38-41.

Plaintiffs essentially argue that the deliberative process privilege is inapplicable in this case. *See* ECF No. 38. Plaintiffs cite several cases (that are persuasive authority) for the proposition that the deliberative process privilege should not apply to civil rights cases such as this one. *See id.* Plaintiffs do not, however, cite any controlling Ninth Circuit or United States Supreme Court authority for this proposition. *See id.*

Defendants contend that the deliberative process privilege applies in this case to the CIRT report. *See* ECF Nos. 39, 40. Defendants explain that CIRT is a team of employees who conduct a mandatory internal-investigation into all critical incidents. ECF No. 39 at 4. All officers involved in a shooting are required to give interviews as part of the CIRT process. *Id.* at 6. At the end of the investigation, CIRT produces a report. *Id.* at 6-7. The CIRT report provides facts about the incident and analyzes whether tactical errors, training errors, or policy violations occurred. *Id.* at 7. The CIRT team then recommends to the sheriff any training and/or policy changes it believes are necessary or would be beneficial. *Id.*

The purpose of this process, according to Defendants, is to evaluate and improve LVMPD's policies and training. *Id.* To this end, CIRT is told that the reports are confidential and is forbidden from disseminating them. *Id.* CIRT reports are kept confidential to encourage CIRT to be candid in its evaluations of LVMPD's policies and training. *Id.*

In this case, Defendants argue that the CIRT report is protected by the deliberative process privilege for much the same reason. Defendants explain that the deliberative process privilege protects documents containing opinions, recommendations, and/or deliberations that are part of the process by which government decisions and policies are made. *Id.* at 8; ECF No. 40. As the Court will discuss below, Defendants further analyze the CIRT report under the requirements of the deliberative process privilege and conclude that the CIRT report is privileged. *See* ECF No. 39 at 8-12.

Defendants also argue that while the factual portions of the CIRT report are relevant, the deliberative portions are not. *Id.* at 10. This is so, according to Defendants, because this case is about constitutional violations, not policy violations.[1] *Id.*

## II. Legal Standard

Discovery is broad. *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 528 (D. Nev. 1997). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. Pro. 26(b)(1). "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998).

One privilege that can protect material from disclosure is the deliberative process privilege. The deliberative process privilege protects "documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated. It was developed to promote frank and independent discussion among those responsible for making governmental decisions, and also to protect against premature disclosure of proposed agency policies or decisions." *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (internal citations omitted); *see also Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 979 (9th Cir. 2009) (the purpose of the deliberative process privilege is to allow agencies to freely "explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny.").

The deliberative process privilege has two elements. *Warner*, 742 F.2d at 1161. First, a document "must be predecisional—it must have been generated before the adoption of an agency's policy or decision." *Id.* Second, a document "must be deliberative in nature, containing opinions, recommendations, or advice about agency policies." *Id.*; *see also Lahr*, 569 F.3d at 979-

---

[1] Defendants also argue that any complaints, discipline, or criticisms of the officers are inadmissible as subsequent remedial measures. *Id.* at 11. The Court will not address this argument except to note that the issue before the Court is not whether the report or portions of it are ultimately admissible. Rather, the issue before the Court is whether the report is protected by the deliberative process privilege and thus shielded from discovery.

80 (providing same two elements of deliberative process privilege). "Purely factual material" in such documents "is not protected." *Warner*, 742 F.2d at 1161; *see also Kowack v. U.S. Forest Serv.*, 766 F.3d 1130, 1135 (9th Cir. 2014) (providing same rule). At times, factual sections may be segregated from deliberative material and produced; other times, factual material may be so interwoven with the deliberative material that it is not capable of segregation. *Warner*, 742 F.2d at 1161 (facts combined with deliberative material in such a way that the two were not separable); *Kowack*, 766 F.3d at 1135 ("A stand-alone fact section, for example, could likely be disclosed without revealing the agency's deliberative process, while isolated facts embedded within a subordinate's explanation of why the allegations were meritless may not be.").

Even if a document meets the two elements of the deliberative process privilege (it is predecisional and deliberative), the privilege is not absolute. *Warner*, 742 F.2d at 1161 ("deliberative process privilege is a qualified one."). "A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Id.* In making this determination, the Court should consider "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id.*

**III.   Analysis**

As an initial matter, the Court addresses Plaintiffs' argument that the deliberative process privilege is inapplicable to this case. As noted above, Plaintiffs did not cite (and the Court did not find) any controlling United States Supreme Court or Ninth Circuit authority providing that the deliberative process privilege cannot or should not apply to civil rights cases. *See also Farmer v. Las Vegas Metro. Police Dept., et al.*, No. 218CV00860GMNVCF, 2020 WL 11028818, at *2 (D. Nev. Feb. 25, 2020) (addressing same issue and applying the deliberative process privilege to a CIRT report). Because the deliberative process privilege is a privilege that the government can utilize to protect some deliberative material and the Court has not located any controlling authority stating that the privilege cannot be used in civil rights cases, the Court does not agree that it is inapplicable here.

Next, the Court addresses whether the two elements of the deliberative process privilege are met in this case. Defendants argue that they are. First, they assert that the CIRT report is predecisional, because it was created before the sheriff determined (1) if officers would be disciplined for the shooting and (2) whether training or policies changes would be made because of the shooting. *See* ECF No. 39 at 8-9. Second, Defendants argue that the CIRT report is deliberative. *Id.* At 9. They stated that the "primary purpose of the CIRT Report is to critically evaluate LVMPD's policy and training and make policy recommendations." *Id.* Additionally, Defendants state that officers are encouraged and expected to candidly evaluate their performance, LVMPD policies, and the training they received. *Id.* Defendants acknowledge that some of the material in the CIRT report is factual but assert that the facts are "'interwoven' with deliberative material." *Id.*

The Court reviewed the CIRT report *in camera*. The Court agrees that the CIRT report is predecisional for the reasons Defendants argued. The Court also agrees that the CIRT report contains deliberative material. The Court does not agree with Defendants, however, that all the facts are interwoven with deliberative material. Specifically pages 1-62 do not contain opinions, recommendations, or advice about agency policies but rather are purely factual and not protected by the deliberative process privilege. Pages 63-82 contain both facts and deliberative material that is interwoven. Accordingly, the deliberative process privilege applies to these pages. However, as noted above, the privilege is not absolute, and a "litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Warner*, 742 F.2d at 1161.

In determining whether the deliberative material in the CIRT report should be disclosed, the Court must consider "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id.*

First, the Court finds that the CIRT report (and specifically, the deliberative material contained therein regarding whether officers' use of force was within LVMPD policy) is highly relevant to Plaintiffs' fifth claim for municipal liability based on an unconstitutional custom or

policy and seventh claim for municipal liability based on ratification, as Plaintiffs argue. *See* ECF No. 38 at 2. This may not be true in every case, but it is here. This cuts in favor of disclosure.

Second, it is unclear to the Court whether Plaintiffs can obtain the evidence contained within the CIRT report elsewhere. The Court is not concerned with the facts contained within the CIRT report (which, as already discussed, are not protected by the deliberative process privilege). Rather, the Court is concerned with CIRT's conclusions related to whether officers' conduct was within LVMPD policy. Defendants do not address this in addressing the availability of other evidence. *See* ECF No. 39 at 11. Instead, they state that "Plaintiff can obtain any policy changes (there were none), training changes (there were none) and the discipline the individual defendant officers received through requests to produce and deposition testimony." *Id.* This statement does not address the availability of other evidence to show whether LVMPD found officers' conduct to be within policy. Accordingly, Defendants have not carried their burden to show that this factor cuts against disclosure. *See Oakes*, 179 F.R.D. at 283 ("The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.").

Third, the government has a central role in this litigation. The government is a party, and its use of force against a citizen is being challenged. It is not an uninvolved entity that is being asked to disclose a typically confidential document for little reason. Accordingly, this cuts in favor of disclosure.

Fourth, Defendants have not demonstrated that disclosure would hinder candid discussion about policies. Defendants contend that disclosure of the CIRT report would "absolutely" hinder frank discussions of future critical incidents, but Defendants offer no support for this claim. ECF No. 39 at 11-12. Defendants simply assert that if investigators and officers knew that the CIRT report could be made public and part of a civil suit, they would be more cautious with their opinions, less forthcoming, and less candid. *Id.* While Defendants' assertions are intuitive, it is unclear if they are true. Indeed, it is also entirely possible that if officers knew their reports would be public, they might be more thorough, accurate, deliberative, and candid about department

policies, officers' use of force, etc.[2] *See Kelly v. City of San Jose*, 114 F.R.D. 653, 664–65 (N.D. Cal. 1987). Whether officers would be more or less candid if they knew their reports would be

---

[2] The idea that officers will be less candid if their statements and assessments may become public was addressed in detail by *Kelly*, 114 F.R.D. at 664–65. The court stated:

> [T]the premise that . . . investigating officers will be less forthright in expressing their opinions if there is a risk of disclosure[] is empirically unsupported and very debatable. The other problem with this line of reasoning is that after it acknowledges the great importance of enforcing federal civil rights policies[,] it *fails to articulate a reason* for deciding to ascribe less weight to that enforcement effort than to the unmeasured harm to government interests that might follow from disclosure of evaluative material in internal affairs files.
>
> Since privileges operate in derogation of the truth finding process, and since the policies that inform federal civil rights statutes are profoundly important, courts should not use empirically unsupported and debatable assumptions to rationalize shifting a burden of justification away from the party asserting privilege (where the burden of justification classically rests) and on to a plaintiff who is attempting simultaneously to enforce his rights and policies that the people, speaking through Constitutional amendments and federal statutes, have elevated to the highest levels of priority.
>
> Since no empirical study supports the contention that the possibility of disclosure would make officers who participate (as respondents or as investigators) in internal affairs investigations less honest[,] it is doubly important to examine the assumptions that underlie that contention. If we posit two alternatives, one in which there is no possibility of disclosure and one in which there is some possibility of disclosure to litigants (protective orders can be used to prevent disclosure to the public generally), and ask which is most conducive to candor, strong arguments can be advanced that it is the alternative in which there is some possibility of disclosure. A police officer who knows that no one from outside the law enforcement community will scrutinize his statements or his investigatory work may not feel the same level of pressure to be honest and accurate as would his counterpart in a system where some disclosure was possible. An officer might expect that someone within his organization would be less exacting in reviewing his statements or reports than someone from the outside, especially if the person from the outside already has substantial information about the incident under investigation and has a strong motive to challenge the accuracy of the officer's memory or the reliability of his conclusions. We rely in our adversary system of justice on the fear of being challenged and exposed by an opponent to keep litigants and lawyers honest. Closer to home, there is little doubt that the greatest sources of discipline in judicial thinking are the fear of close scrutiny on appeal and the fact that judges are required to explain and justify their rulings, in public, to an audience half of which always is hostile. Fear of scrutiny by knowledgeable people motivated to be aggressive is likely to inspire police officers to conduct investigations and write reports that are less vulnerable to criticism, and the way to make them less vulnerable is to make them more thorough, more accurate and better reasoned. In short, officers will feel pressure to be honest and logical when they know that their statements and their work product will be subject to demanding analysis by people with knowledge of the events under investigation and considerable incentive to make sure that the truth comes out (i.e., a civil rights plaintiff and her lawyer). Thus[,] there is a real possibility that officers working in

discoverable likely depends on the individual officer and the strength of his/her competing motivations (e.g., whether he/she is motivated to protect the department from liability, to protect an individual officer, to appear thorough, to improve policies, to tell give his/her honest opinion, whatever it may be, etc.). Accordingly, without more from Defendants to support their assertion, the Court cannot agree that the possibility of disclosure will make officers more cautious and less candid.

To be clear, the Court is not saying that disclosure of deliberative material would never hinder honest, internal discussions. Here, however, Defendants have not demonstrated that disclosure would, in fact, discourage candid participation in preparing the CIRT report. Further, without disclosing what is contained in the CIRT report, the Court notes that having reviewed it *in camera*, it does not appear that this is an instance where personnel were engaging in candid discussions about tactics, training, or policy that they would not have engaged in had they known

---

closed systems will feel less pressure to be honest than officers who know that they may be forced to defend what they say and report.

There is another vantage from which to think about the contention that officers who fear disclosure of their statements or reports will be less honest than those who entertain no such fear. An officer who is being interviewed during an internal investigation, or who is conducting such a probe, knows that what he says or writes could lead to criminal prosecution of other officers or to their termination from the force. *E.g., Wood v. Breier,* 54 F.R.D. 7, 13 (E.D.Wis.1972). That knowledge could be a considerable source of pressure to try to minimize any possible transgressions. In fact, pressure to "cover up" is likely to be much more intense from these sources than from the possibility that reports might be used in civil litigation, a process which, at the worst, might result in a judgment that the defendant officers would have no resources to pay (or that would be paid for them by insurance or their employer). Thus[,] the possibility of disclosure to a civil litigant probably adds almost nothing to the pressure to dissemble that officers already would feel; those who are going to lie are going to do so regardless of whether there is some chance of disclosure to a citizen complainant.

*Kelly*, 114 F.R.D. at 664–65. Several courts agree with this reasoning and require more than a blanket assertion that officers will be less candid if reports are disclosed. *See, e.g., Myles v. City of San Diego*, No. 15CV1985-BEN (BLM), 2016 WL 2343914, at *5 (S.D. Cal. May 4, 2016) ("Defendants state that disclosure of the requested documents 'is likely to discourage persons with relevant information from providing the candid statements and assessments,' that deputies may be 'less forthcoming,' and that supervisors 'may begin to withhold critical feedback and frank evaluation,' which would negatively affect the overall functioning of the Sheriff's Department . . . However, Defendants fail to provide any support for these assertions and, in fact, courts have rejected the theory."); *Sanchez v. City of San Jose*, 250 F.R.D. 468, 470–71 (N.D. Cal. 2008) (defendants argued that "disclosure will discourage exhaustive investigations and candid analysis. But there is no support for this argument and in the past, courts have struck down such reasoning.").

the report would be disclosed. Accordingly, Defendants have not demonstrated that disclosure of the CIRT report in this case would hinder candid discussion about policies in the future. This factor cuts in favor of disclosure.

Having considered the four factors above, the Court finds that Plaintiffs' need for the CIRT report and the need for accurate fact-finding override Defendants' interest in non-disclosure in this particular case. *See Warner*, 742 F.2d at 1161.

### IV.   Conclusion

**IT IS THEREFORE ORDERED** that Defendants must produce the CIRT report to Plaintiffs by October 8, 2021.

DATED: September 29, 2021

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE