MCNUTT LAW FIRM, P.C.
Daniel R. McNutt, Esq., Bar No. 7815
Matthew C. Wolf, Esq., Bar No. 10801
11441 Allerton Park Drive, #100
Las Vegas, Nevada 89135
Tel.: (702) 384-1170 / Fax.: (702) 384-5529
drm@mcnuttlawfirm.com
mcw@mcnuttlawfirm.com
*Counsel for Defendant John Squeo*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JEANNE LLERA, and JORGE L. GOMEZ, as the appointed co-special administrators of the estate of JORGE A. GOMEZ; JEANNE LLERA; and JORGE L. GOMEZ,<br><br>Plaintiffs,<br><br>v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT; RYAN FRYMAN; DAN EMERTON; VERNON FERGUSON; ANDREW LOCHER; JOHN SQUEO; and DOES 2-10, inclusive,<br><br>Defendants. | Case No.: 2-20-CV-01589-RFB-BNW<br><br>**MOTION FOR SANCTIONS FOR INTENTIONAL SPOLIATION OF EVIDENCE** |

Per Fed. R. Civ. P. 37(e) and this Court's inherent powers, Defendant Detective John Squeo (Det. Squeo) respectfully requests sanctions for spoliation of evidence against Plaintiffs Jeanne Llera and Jorge L. Gomez (Jorge Luis).

## I.   INTRODUCTION.

Spoliation sanctions serve three primary objectives: leveling the playing field, punishing despoilers, and deterring similar conduct in the future. Available sanctions include, among other things, dismissing the action, presuming the lost information was unfavorable to the despoiler, or instructing the factfinder to infer the culpable party spoliated evidence. This Court should sanction Ms. Llera for ***intentionally*** destroying her communications with percipient witnesses during the pendency of this case. It should also sanction Jorge Luis for willfully removing evidence from Jorge Antonio's truck while knowing the Las Vegas Metropolitan Police Department (LVMPD) was looking for the vehicle and had not located and searched it.

LVMPD officers fatally shot Jorge Antonio near the Lloyd D. George U.S. Courthouse on the night of June 1, 2020. He approached officers guarding the courthouse with "a tactical vest which contained armor plates, a Glock pistol carbine conversion (a handgun converted to a rifle via an exoskeleton), a Glock 19 handgun, and a Glock 17 handgun which had been concealed in a satchel." (Ex. A, LVMPD's Force Investigation Team's (FIT) Rpt. at LVMPD 000023.) Before the lethal shooting, Det. Squeo struck Jorge Antonio with nonlethal bean bag rounds after Jorge Antonio threatened approaching officers with an item Det. Squeo initially perceived to be a baseball bat but actually was an illegal short-barreled rifle.[1] (Ex. C, Squeo Dep. 58:11 – 77:25.) Jorge Antonio ran northbound away from the courthouse, and officers stationed on Las Vegas Blvd. saw him "raise [a] rifle in their direction, and they discharged their firearms, striking Gomez, who then fell to the ground." (Ex. A at LVMPD 000023.) As discussed more *infra*, a video shows the rifle in front of Jorge Antonio moments before the officers fired the lethal rounds.

This Court should sanction Ms. Llera for intentionally destroying her communications with witnesses Berklee Guest and Rayce Rayos. Plaintiffs first disclosed and produced declarations from those witnesses over a year after they began communicating with them. (Ex. D, Pls.' First Suppl. Discl., Nov. 5, 2021.) Plaintiffs have known about the witnesses since 2020 but waited more than a year, until November 2021, to first disclose them. (Ex. E, Guest Dep. 16:14–24; Ex. F, Rayos Dep. 30:16–18.) The witnesses claim to have been near the courthouse when the shooting happened, but in deposition testimony, they admitted that they did not see the shooting because they were facing the opposite direction when the fatal shots were fired.[2] (Ex. E, Guest Dep. 18:9–11 (Ms. Guest "was running" when the fatal shooting happened); 59:2–9; Ex. F, Rayos Dep. 60:6–

---

[1] The rifle is designed to have a 16-inch barrel, but Jorge Antonio illegally inserted a pistol barrel into the gun, which made it an illegal short-barreled rifle under Nev. Rev. Stat. § 202.275(2)(a)(1). (Ex. B, Jorge Luis Dep. 63:3–22; 85:17–25 (Jorge Luis still has the rifle's 16-inch barrel at his home); 101:15 – 102:9.)

[2] Plaintiffs are unaware of anyone who saw the shooting. (Ex. G, Llera Dep. 49:11 – 50:3; 52:12–14; Ex. H, Ms. Llera's Ans. to Squeo's Interrog. #9, Feb. 10, 2022, 5:13–21; Ex. I, Jorge Luis's Ans. to Squeo's Interrog. #19, Feb. 10, 2022, 5:25 – 6:6.)

8 ("Q. Was he already on the ground when you turned around?  A.  Yes."); 61:10–20.)[3] Mr. Rayos acknowledges Jorge Antonio could have pointed his rifle toward the officers when he had his back turned toward Jorge Antonio. (Ex. F, Rayos Dep. 125:13–22; 131:1–10.)

During the pendency of this case and to subvert Defendants' discovery, Ms. Llera asked Ms. Guest and Mr. Rayos to communicate with her via an encrypted phone application called "Signal." That cellular phone application "allows users to send and receive encrypted text messages accessible only to sender and recipient, and to change settings to automatically delete these messages after a short period of time." *Herzig v. Arkansas Found. for Med. Care, Inc.*, 2019 WL 2870106, at *4 (W.D. Ark. July 3, 2019). Ms. Llera explicitly told Mr. Rayos she wanted to use Signal because it would not save their communications. (Ex. F, Rayos Dep. 74:10 – 75:21.) After Det. Squeo subpoenaed Ms. Guest to obtain her communications with Plaintiffs, Ms. Llera asked Ms. Guest to communicate with her through Signal. Ms. Guest now neither possesses copies of her Signal communications with Ms. Llera nor recalls what they discussed. (Ex. E, Guest Dep. 38:15 – 39:10.) Mr. Rayos purportedly is "not a 100 percent positive" whether he communicated with Ms. Llera via Signal. (Ex. F, Rayos Dep. 109:14–19.) To date, neither Ms. Llera nor the witnesses have produced their Signal communications. The seriousness of spoliating communications with witnesses cannot be understated. The efforts to spoliate evidence were intentional and egregious.

This Court should also sanction Jorge Luis for removing evidence from Jorge Antonio's truck while he knew that LVMPD was searching for the vehicle and had not located or searched it. Jorge Antonio borrowed Jorge Luis's truck and parked it in downtown Las Vegas on the night in question. Shortly after the shooting, a sergeant told Jorge Luis that LVMPD was looking for the truck, and Jorge Luis said he did not know its whereabouts. At some unknown time, the law firm Gonzalez & Flores—one of three firms representing Plaintiffs in this case—found the truck parked in downtown Las Vegas. On June 5, 2020, the firm had the truck towed to its parking lot. That same day, Jorge Luis entered the truck and removed items from it.

---

[3]   Plaintiffs' counsel drafted Mr. Rayos's declaration, and Mr. Rayos rejected their first draft of the declaration because it inaccurately implied that he was watching Jorge Antonio when the fatal shooting happened. (Ex. F, Rayos Dep. 37:7–15; 88:15–23; 137:6–20.)

On June 6, 2020, a patrol officer spotted the truck in the firm's parking lot. LVMPD served a search warrant for the firm's security footage, and the footage showed the truck arrived at the firm on June 5, 2020, and Jorge Luis removed items from it that same day. The tow truck driver saw a large black case inside the truck. The case was missing when LVMPD searched the truck. Jorge Luis now denies there was a black case in the truck. The black case likely contained another rifle with an illegal "bump stock"[4] which Jorge Luis acknowledged owning but claimed to have destroyed. As shown *infra*, Jorge Antonio viewed the protests in summer 2020 as a civil war, and just the day before his death, he authored a message saying, "Bumpstocks win civil wars."

This Court should enter terminating sanctions against Ms. Llera and Jorge Luis. The duty to preserve evidence arises when a party should reasonably know the evidence may be relevant to anticipated litigation. Spoliation is willful when done with some notice of the evidence's potential relevance. Ms. Llera had a duty to preserve her Signal communications with the witnesses. This case had been pending for more than a year when she asked the witnesses to use Signal. Any statements the witnesses made through Signal about their observations on the night in question would be highly relevant to the claims and defenses in the case. Mr. Rayos's deposition testimony shows Ms. Llera used Signal to prevent Defendants from obtaining her communications.

When he removed evidence from the truck, Jorge Luis knew LVMPD was looking for the vehicle, and he also anticipated litigation because he had already retained Gonzalez & Flores. The fact that neither he nor his counsel notified LVMPD of the truck's whereabouts before moving, entering, and removing evidence from the vehicle shows Jorge Luis intended to hide evidence from LVMPD. The contents of the missing black case are highly relevant to the claims and defenses in this case. Plaintiffs contend that Jorge Antonio was a peaceful protester on the night in question— albeit one who was wearing body armor, carrying an illegal short-barreled rifle, an illegally concealing handgun in a satchel, a third firearm in a hip holster, and extra boxes of ammunition— who did not plan to commit any acts of violence against the police. But if Jorge Antonio had another

---

[4] For a definition of bump stocks, *see* https://www.atf.gov/rules-and-regulations/bump-stocks.

1  rifle hidden in his truck with an illegal bump stock, that evidence would further rebut Plaintiffs'
2  "peaceful protester" theory.  Also, the missing black case may have contained documents reflecting
3  Jorge Antonio's state of mind and plans for the night in question.  Days before his death, Jorge
4  Antonio prolifically authored numerous messages and social media posts reflecting his belief the
5  protesters needed to use violence to accomplish their goals.

6  This Court should sanction Ms. Llera and Jorge Luis for these reasons and others.

## II.   STANDARD OF REVIEW.

**A.   Sanctions under Rule 37(e) for Spoliation of Electronically Stored Information**.

"[A] proper spoliation sanction should serve both fairness and punitive functions." *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009).  Spoliation sanctions seek to level "the playing field" or restore "the prejudiced party to the position it would have been without spoliation," punish "the despoiler for its actions," and send "a clear message to other potential litigants that this type of behavior will not be tolerated and will be dealt with appropriately if need be." *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 111 n.3 (E.D. Pa. 2005) (quoting *Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004)).  The "prophylactic, punitive, and remedial rationales underlying" spoliation sanctions include placing "the risk of an erroneous judgment on the party who wrongfully created the risk[.]" *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)).

Rule 37(e) addresses the "spoliation of electronically stored information" (ESI). *Oracle USA, Inc. v. Rimini St., Inc.*, No. 2:10-CV-0106-LRH-VCF, 2020 WL 9209714, at *3 (D. Nev. Sept. 21, 2020), *report and recommendation adopted*, No. 2:10-CV-00106-LRH-VCF, 2021 WL 1224904 (D. Nev. Mar. 31, 2021).  It reads as follows:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1)   upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2)   only upon finding that the party acted with the intent to deprive

another party of the information's use in the litigation may:

    (A)    presume that the lost information was unfavorable to the party;

    (B)    instruct the jury that it may or must presume the information was unfavorable to the party; or

    (C)    dismiss the action or enter a default judgment.

Ordinarily, a district court "has the inherent discretionary power" to address spoliation. *Med. Lab'y Mgmt. Consultants v. Am. Broad. Companies, Inc.*, 306 F.3d 806, 824 (9th Cir. 2002) (quoting *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir.1993)); *see also Perrong v. Sperian Energy Corp.*, No. 2:19-CV-00115-RFB-EJY, 2020 WL 6287723, at *7 (D. Nev. Oct. 27, 2020) ("A federal court is empowered to sanction a spoliating party under its inherent authority or" Rule 37). However, Rule 37(e) supplants a court's inherent authority to impose sanctions for ESI spoliation. *See, e.g., Snap Lock Indus., Inc. v. Swisstrax Corp.*, No. 2:17-CV-02742-RFB-BNW, 2021 WL 864054, at *2 (D. Nev. Mar. 5, 2021); *see also Erwine v. Churchill Cty.*, No. 3:18-CV-00461-RCJ-WGC, 2021 WL 4066982, at *5 n.3 (D. Nev. Sept. 7, 2021).

Rule 37(e) "imposes a duty to preserve evidence in litigation and when litigation is reasonably foreseeable." *Erwine*, 2021 WL 4066982, at *5. A court may impose sanctions under Rule 37(e) "only if it finds (1) the party failed to preserve ESI that should have been preserved in anticipation or conduct of litigation; (2) the information was lost because the party failed to take reasonable steps to preserve it; (3) the ESI cannot be restored or replaced; and (4) the plaintiffs were prejudiced by the loss." *Oracle*, 2020 WL 9209714, at *3 (quoting *Small v. Univ. Med. Ctr.*, No. 2:13-CV-0298-APG-PAL, 2018 WL 3631882 (D. Nev. July 31, 2018)) (cleaned up). "The range of" available sanctions "is quite broad" and may include "forbidding the [despoiler] from putting on certain evidence[.]" Fed. R. Civ. P. 37 Advisory Committee Notes to the 2015 Amendment. It also may "include terminating sanctions." *Newberry v. Cty. of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018); *see also Roadrunner Transp. Servs., Inc. v. Tarwater*, 642 F. App'x 759 (9th Cir. 2016); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 960 (9th Cir. 2006).

### B. Spoliation Sanctions under the Court's Inherent Authority.

Spoliation "is the 'destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation.'" *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009). A party engages in spoliation if it "had 'some notice that the documents were potentially relevant' to the litigation before they were destroyed." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002) (quoting *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)). This "objective standard" considers "whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011). "The duty to preserve . . . extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Morford v. Wal-Mart Stores, Inc.*, No. 2:09-CV-02251-RLH, 2011 WL 635220, at *3 (D. Nev. Feb. 11, 2011).

"If a party alters or destroys evidence, the party requesting spoliation sanctions must further demonstrate that: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the evidence was relevant to the party's claim or defense such that a reasonable factfinder could find that it would support that claim or defense." *Asfaw v. Wal-Mart Stores, Inc.*, No. 2:19-CV-01292-GMN-NJK, 2021 WL 2006283, at *1 (D. Nev. May 19, 2021); *see also Soule v. P.F. Chang's China Bistro, Inc.*, No. 2:18-CV-02239-GMN-EJY, 2020 WL 959245, at *4 (D. Nev. Feb. 26, 2020); *Mizzoni v. Allison*, No. 3:15-CV-00313-MMD-VPC, 2018 WL 3203623, at *3 (D. Nev. Apr. 4, 2018), *report and recommendation adopted*, No. 3:15-CV-00313-MMD-VPC, 2018 WL 2197957 (D. Nev. May 14, 2018). The movant must prove these elements by a preponderance of the evidence. *Strohmeyer v. Belanger*, No. 3:14-CV-00661-RCJ-WGC, 2020 WL 6821321, at *3 (D. Nev. July 23, 2020). A culpable state of mind includes negligence. *Brannan v. Bank of Am.*, No. 2:16-CV-01004-GMN-GWF, 2017 WL 4031442, at *2 (D. Nev. Sept. 13, 2017), *report and recommendation adopted*, No. 2:16-CV-01004-GMN-GWF, 2018 WL 1002613 (D. Nev. Feb. 20, 2018) (quoting *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 628 (C.D. Cal. 2013)).

Amongst the available options for sanctions, "a court can instruct the jury that it may draw

an inference adverse to the party or witness responsible for destroying the evidence," "exclude witness testimony proffered by the party responsible for destroying the evidence and based on the destroyed evidence," or "dismiss the claim of the party responsible for destroying the evidence." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006); *see also Ousdale v. Target Corp.*, No. 2:17-CV-02749-APG-NJK, 2019 WL 3502887, at *3 (D. Nev. Aug. 1, 2019) ("[S]anctions may include, among other things, dismissal, excluding evidence, or giving a rebuttable presumption or adverse inference instruction."); *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 341–54 (D. Ariz. 2022) (imposing an adverse inference after the plaintiff sent a witness "a summary of the evidence in this case" via text message and deleted the message shortly before the witness's deposition). But "[t]he court's inherent power to remedy despoiled evidence is not limited to issuing an adverse inference or disposing of a case." *Mizzoni v. Allison*, No. 3:15-CV-00313-MMD-VPC, 2018 WL 3203623, at *8 (D. Nev. Apr. 4, 2018), *report and recommendation adopted*, No. 3:15-CV-00313-MMD-VPC, 2018 WL 2197957 (D. Nev. May 14, 2018).

"The most severe sanction is" terminating sanctions, "[t]he middle available sanction is to order a rebuttable presumption against the offending party that the evidence, if it had not been despoiled, would have been detrimental to the despoiler," and "[t]he last and least severe sanction is to enter an adverse inference jury instruction that an offending party destroyed evidence." *Soule v. P.F. Chang's China Bistro, Inc.*, No. 2:18-CV-02239-GMN-EJY, 2020 WL 959245, at *4 (D. Nev. Feb. 26, 2020). "To warrant a rebuttable presumption, the offending party must have consciously disregarded its obligation to preserve lost evidence. That is, a defendant must have willfully destroyed the evidence with intent to harm." *Id.* (internal citation omitted) (cleaned up); *see also Leon*, 464 F.3d at 959 (quoting *Kitsap*, 314 F.3d at 1001) ("A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'").

The "court also has the broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). "A finding of bad faith is not a prerequisite for an adverse inference. A spoliation remedy, however, requires some degree of

culpability. The court need only find that the nonmoving party acted with 'conscious disregard' of its obligations." *Brown v. Sam's W. Inc.*, No. 2:15-CV-01964-LDG-CWH, 2018 WL 576826, at *2 (D. Nev. Jan. 26, 2018) (internal citation omitted).

If the spoliation is "due to willfulness, fault, or bad faith," *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 946–47 (9th Cir. 1993), the district court may impose terminating sanctions after considering "the following factors: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" *Leon*, 464 F.3d at 958 (quoting *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995)); *see also Volcan Grp., Inc. v. Omnipoint Commc'ns, Inc.*, 552 F. App'x 644, 645 (9th Cir. 2014) (affirming terminating sanctions for spoliation).[5]

The fifth factor for terminating sanctions has three subparts: "whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). This test is not "mechanical," and the "list of factors amounts to a way for a district judge to think about what to do, not a series of conditions precedent before the judge can do anything, and not a script for making what the district judge does appeal-proof." *Valley Engineers Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998). The "key factors [for terminating sanctions] are prejudice to the party seeking sanctions and the availability of lesser sanctions." *Mott v. Trinity Fin. Serv.*, 2:17-CV-01754-RFB-GWF, 2019 WL 1300071, at *4 (D. Nev. March 21, 2019) (citing *Henry*, 983 F.2d at 948).

///

---

[5] The common law factors for imposing terminating sanctions under the court's inherent powers may be inapplicable to ESI spoliation because "persuasive authority" indicates "Rule 37(e) prohibit courts from imposing sanctions for destruction of ESI based on their inherent authority." *Snap Lock Indus.*, 2021 WL 864054, at *2. Nonetheless, in an over-abundance of caution, this motion applies the common law factors to its request for terminating sanctions for Ms. Llera's ESI spoliation regarding the Signal communications.

### III.   LEGAL ARGUMENTS.

**A.   This Court Should Sanction Ms. Llera for Spoliation.**

    **1.   *Ms. Llera Admitted That She Communicated with Ms. Guest via Signal So That the Communications Would Not be Discoverable.***

This Court should sanction Ms. Llera because she deliberately destroyed her communications with Ms. Guest. She first contacted Ms. Guest in August 2020 and communicated with her via Twitter and text messages. (Ex. E, Guest Dep. 50:2 – 51:2; 96:5 – 97:24; Ex. J, BERKLEE015–20.) In November 2021, Det. Squeo served Ms. Guest with a subpoena to get her communications with Plaintiffs. (Ex. E, Guest Dep. 12:20 – 13:1; Ex. K, Subpoena Duces Tecum.) Ms. Guest texted the subpoena to Ms. Llera. (Ex. J, Ms. Llera and Ms. Guest's Text Messages, Nov. 12, 2021.) Ms. Llera then messaged Ms. Guest on Signal and said, "[L]et's talk on here from now on." (Ex. E, Guest Dep. 38:15 – 39:7; 123:8.) Clearly, Ms. Llera intended to provide information to Ms. Guest that she wanted to hide from Defendants.

Ms. Llera's Signal communications with Ms. Guest have been lost. Ms. Guest testified that when Det. Squeo "had subpoenaed the evidence those messages did not exist." (Ex. E, Guest Dep. 39:1–3; 122:12–20.) She supposedly now "cannot remember" what she discussed on Signal with Ms. Llera. (*Id.* 39:8–10.) Ms. Llera also has not produced the communications. Det. Squeo served a request for production for Plaintiffs' communications with Ms. Guest. Ms. Llera promised to "produce all responsive documents in their possession, custody and control," but she did not produce her Signal communications with Ms. Guest. (Ex. L, Pls.' Resp. to Req. #14, Dec. 30, 2021, 5:1–2; Ex. M, Pls.' Document Production.) Accordingly, Ms. Llera's spoliation has resulted in the permanent loss of her Signal communications. The circumstances surrounding Plaintiffs' disclosure of Ms. Guest—over a year after they began communicating with her—are troubling enough. However, to compound the fact that Plaintiffs concealed Ms. Guest as a witness, they intentionally destroyed relevant evidence regarding her testimony. Again, the seriousness of this spoliation cannot be understated, and the most stringent sanction is required.

    **2.   *Ms. Llera May Have Communicated with Mr. Rayos via Signal.***

Ms. Llera also may have communicated with Mr. Rayos through Signal. At his deposition,

Mr. Rayos initially believed he had never used Signal. (Ex. F, Rayos Dep. 34:11–13; 74:4–6.) Later, he reviewed a text message in which Ms. Llera asked him if he had Signal and he responded, "Yes. You want to call?" (Ex. M; Ex. F, Rayos Dep. 107:22 – 108:15.) After being shown that text message, Mr. Rayos said he was "not a 100 percent positive, you know, if we communicated over Signal or not[.]" (Ex. F, Rayos Dep. 109:17 – 111:6.) To date, neither Ms. Llera nor Mr. Rayos has produced any communications from Signal. In addition, Mr. Rayos admitted to giving a recorded statement to Plaintiffs that has never been produced. (*Id*. 37–38; *see also* Ex. N, Pls.' Resp. to Det. Squeo's Req. for Production #28, April 7, 2022, 5:6–11 (Det. Squeo asked Plaintiffs to produce Mr. Rayos's recorded statement, but Plaintiffs failed to do so).)

### 3. *This Court Should Sanction Ms. Llera.*

To sanction Ms. Llera for intentionally destroying her Signal communications, this Court should enter terminating sanctions against Ms. Llera and exclude Ms. Guest and Mr. Rayos as trial witnesses. Rule 37(e)(2) authorizes a rebuttal presumption, an adverse inference, or terminating sanctions if (1) the despoiler should have preserved the ESI; (2) the despoiler failed to take reasonable steps to preserve it; (3) the ESI cannot be restored or replaced through additional discovery; and (4) the despoiler acted with the intent to prevent another party from using the ESI in the litigation. *See*, *e.g.*, *Fed. Trade Comm'n v. Noland*, 2021 WL 3857413, at *1 (D. Ariz. Aug. 30, 2021) (imposing an adverse inference due to the despoiler's use of Signal and another encrypted application); *see also Burris v. JPMorgan Chase & Co.*, 2021 WL 4627312, at *16 (D. Ariz. Oct. 7, 2021) (imposing terminating sanctions for failure to preserve text messages). The record before this Court easily satisfies the factors for terminating sanctions.

The duty to preserve evidence arises "when litigation is 'pending or reasonably foreseeable.'" *Medina v. Boeing Co.*, 2022 WL 599021, at *2 (C.D. Cal. Jan. 27, 2022) (quoting *Sunrider Corp. v. Bountiful Biotech Corp.*, 2010 WL 4590766, at *29 (C.D. Cal. Oct. 8, 2010)). Plaintiffs filed this case on August 29, 2020. (Dkt. 2.) This case had been pending for over a year when Ms. Llera used Signal. (Ex. E, Guest Dep. 38:15 – 39:7 (Ms. Llera messaged Ms. Guest on Signal after Det. Squeo served Ms. Guest with a subpoena in November 2021); Ex. M (Ms. Llera asked Mr. Rayos if he had Signal on September 4, 2021).) Communications regarding what the

witnesses observed on the night in question are relevant to the claims and the defenses in this case. Accordingly, Ms. Llera was under a duty to preserve the Signal communications.

Spoliation is willful "if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" *Leon*, 464 F.3d at 959 (quoting *Kitsap*, 314 F.3d at 1001). Ms. Llera willfully destroyed the Signal communications to prevent Defendants from obtaining them. She told Mr. Rayos she wanted to use Signal because "it was unable to be surveillanced by authorities" and "maybe an outside agency or something like that [would be] able to look into our records or look into, you know, whether we were communicating." (Ex. F, Rayos Dep. 74:17 – 75:15; 75:16–21 ("Q. Did Jeanne ever tell you that the reason she wanted to use the Signal app was because the messages are not saved? A. Yes. She was saying that's a safer alternative to the traditional text messaging, yes. That's why it had been suggested.").)

Prejudice is present if the discovery "violations impair the requesting party's ability to go to trial or threaten the rightful decision of the case." *United States v. Reeves*, 2:12-CV-01916-RFB, 2015 WL 273597, at *10 (D. Nev. Jan. 21, 2015); *see also Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990). Ms. Llera's spoliation has severely and irreparably threatened the rightful decision of the case. Defendants do not know—and will never know—if Ms. Llera or the witnesses made statements through Signal contradicting their testimony. The lost Signal communications cannot be restored because, as Ms. Guest explained, Signal "does not save the messages." (Ex. E, Guest Dep. 121:2–3.)

Ms. Llera's "discovery violations 'threaten to interfere with the rightful decision of the case.'" *Valley Engineers*, 158 F.3d at 1057 (quoting *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990)). An inference or presumption would be inadequate because it "would still leave Defendants without remedy if Plaintiffs introduce some evidence that overcomes such a presumption." *Jerry Beeman & Pharmacy Servs., Inc. v. Caremark Inc.*, 322 F. Supp. 3d 1027, 1040 (C.D. Cal. 2018) (entering terminating sanctions due to spoliation). Defendants do not know—and will never know—what the witnesses or the Plaintiff said in the Signal communications. When a party intentionally destroys evidence, the clear presumption is that the evidence is not good for their case. No lesser sanctions could restore the lost Signal

communications, remedy the severe prejudice to Defendants, punish Ms. Llera adequately for her egregious misconduct, or sufficiently deter similar future conduct.

Alternatively, in addition to excluding Ms. Guest and Mr. Rayos as trial witnesses, this Court should presume or instruct the factfinder to infer that the communications would have been adverse to Ms. Llera by showing (1) the witnesses saw Jorge Antonio's rifle in front of him; and (2) Ms. Llera told the witnesses she had a strained relationship with Jorge Antonio. Independent evidence corroborates those presumptions or inferences. *See, e.g., In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–87 (9th Cir. 2010) (affirming an adverse "inference that the spoliated evidence would demonstrate" Oracle's CEO Larry Ellison had "knowledge of any material facts that Plaintiffs could otherwise establish.").

This Court should presume or instruct the factfinder to infer the lost Signal communications would have shown the witnesses saw the rifle in front of Jorge Antonio as he ran. Independent evidence corroborates that presumption or inference. LVMPD produced a surveillance video from the D Hotel. At around 1:52, the video clearly shows a straight black line in front of Jorge Antonio. (Ex. O, Video Screenshot; Ex. P, D Hotel Video, LVMPD 005632.) Defendants' rebuttal expert witness Tom Martin—an expert in ballistics and constructing police shootings—has opined the black line is the rifle. (Ex. Q, Martin Dep. 88:2 – 89:5; 92:12–23.) Additionally, the Reno Gazette-Journal published a video someone filmed from the intersection of Las Vegas Boulevard and East Bridger Avenue while looking southbound toward Jorge Antonio's face as Jorge Antonio ran northbound. (Ex. F, Rayos Dep. 61:4–9; Ex. R, Video.) The video captured Jorge Antonio running northbound along Las Vegas Boulevard, and moments before the officers fired the lethal rounds, someone excitedly uttered, "Oh, he got a gun!" (Ex. R, Video.) That person could have seen the rifle from their perspective only if it had been in front of Jorge Antonio.

This Court should also presume or instruct the factfinder to infer the lost Signal communications would have shown Ms. Llera had a strained relationship with Jorge Antonio. Independent evidence supports that presumption or inference. After high school, Jorge Antonio chose to live in Las Vegas with Jorge Luis rather than with Ms. Llera in Florida. (Ex. G, Llera Dep. 21:10–19; 23:25 – 24:3.) Before his death, he had not seen Ms. Llera in over a year. (*Id.* 34:16 –

35:10.) On August 8, 2018, he wrote the following in his phone:

> I needed this when I was younger **mom**. I don't need it now. **You can't buy your way into my life** and **you'll always try to make me feel bad for taking up more space than I should in your life** because you raised me with few real world opportunities. You always tried to teach me to be strong in your own ways, but when it didn't work for you, **you gave up on me**. I was strong on my own and then I needed help, and now I'm trying to grow with peace. Dad is good enough for both of you it seems. Who would have thought. It's really sad to feel this way all the time around you **so can I please have some time away from you**. I'm doing well in school and I have a lot of opportunities going for me in my job and all I want is to have the . . . .

(Ex. S, LVMPD 006734 (emphasis added); Ex. H, Ms. Llera's Ans. to Squeo's Interrog. #14, 7:23–24, Feb. 10, 2022 ("Plaintiffs do not dispute that this note was located on Jorge A. Gomez's phone.").) That same day, Jorge Antonio also wrote the following in his phone:

> You're not willing to accept the truth. You people have some vision in your head that I want to be a failure, so you make me feel bad about just trying to make it with what I have. Last I checked, **you haven't been a parent unless I come visit you**. **You looked over your responsibility of being a parent when it was convenient for you... and you want me to make you feel like a great <u>mom</u>?** Look to whoever you want for your answers but I'm tired of being fake for you and pretending that life didn't destroy me because **I don't want to make you feel bad for not being there**. At the end of the day, **you wouldn't have cared anyway** because I saw how you treated Johnathan and dad when they really needed you. Good parents prepare for their kids' future, not uproot them because you're too weak to see the man you drained in his death bed. **Nothing was ever good enough for you and you never realized your impact on how you affected others until it's too late**. Your needs and mine are conflicting at this time and I'm trying to stop processing your need of me so I can do better in my life. **Please take a step back and enjoy your life** . . . .

(Ex. S, LVMPD 006734 (emphasis added); Ex. H, Ms. Llera's Ans. to Squeo's Interrog. #15, 8:11–12 (Plaintiffs do not dispute this note was on Jorge Antonio's phone).) On May 31, 2020, Jorge Antonio's grandmother told him he "need[s] to be with your family" and suggested he visit Ms. Llera, and he replied, "I don't want to talk about my mom with you anymore." (Ex. A, FIT Rpt. at LVMPD 000089; Ex. H, Ms. Llera's Ans. to Squeo's Interrog. #13, 7:10–11 (Plaintiffs do not dispute this conversation was on Jorge Antonio's phone). This record shows Jorge Antonio had a strained relationship with Ms. Llera.

Accordingly, this Court should (1) exclude Ms. Guest and Mr. Rayos as trial witnesses and (2) either (a) enter terminating sanctions against Ms. Llera, or alternatively, (b) presume or instruct

the factfinder to infer the lost Signal communications would have been unfavorable to Ms. Llera for reasons including without limitation demonstrating the witnesses saw the rifle and that Ms. Llera revealed to the witnesses that she had a strained relationship with Jorge Antonio.

**B.    This Court Should Sanction Jorge Luis for Spoliation.**

   **1.   *Jorge Luis and His Counsel Willfully Removed Evidence from Jorge Antonio's Truck Before LVMPD Located and Searched the Vehicle*.**

This Court should sanction Jorge Luis because he and his counsel willfully removed evidence from Jorge Antonio's truck while LVMPD was looking for the vehicle and had not yet located and searched it. Jorge Antonio borrowed his father's truck on the night in question. (Ex. B, Jorge Luis's Dep. 158:23–25.) Sometime after his death, Gonzalez & Flores found the vehicle parked in downtown Las Vegas. (*Id.* 159:12–13; 160:7–19.) The firm hired nonparty Ben Avila from Avila's Towing to tow the truck to the firm's parking lot on June 5, 2020. (Ex. T, Avila Dep. 6:13–15; 7:6–8; 11:4–8; 16:2–21; 21:17–24; 23:15 – 24:2; 31:2–12; Ex. U, Images from Gonzalez & Flores' Security Camera, SQUEO00005–15.)

Shortly after Jorge Antonio's death, LVMPD "told Jorge Luis [it] was looking for his truck, and he [said] he did not know where his truck was located." (Ex. V, Sgt. Michelle Iacullo Decl. ¶ 4; Ex. A, FIT Rpt. at LVMPD 000019 ("Following the [shooting], [Jorge Luis] was unaware of where his truck was located.").) After that, on June 5, 2020, Jorge Luis called Mr. Avila about towing the truck. (Ex. T, Avila Dep. 14:15 – 15:8). Jorge Luis also met Mr. Avila on June 5, 2020, at the truck's parked location downtown. (Ex. T, Avila Dep. 16:2–10; Ex. W, Jorge Luis's Ans. to Squeo's Interrog. #9, Aug. 10, 2021, 2:6–18.) After Mr. Avila towed the truck to Gonzalez & Flores's parking lot, Jorge Luis entered the truck on June 5, 2020, and removed items from it. (Ex. X, Jorge Luis's Ans. to Squeo's Interrogs. ##3–4, May 21, 2021, 4:13 – 5:16.) Despite knowing LVMPD was searching for the truck, Jorge Luis and his counsel never notified LVMPD before towing, entering, and removing evidence from the truck.

On June 6, 2020, an officer spotted the truck at Gonzalez & Flores. (Ex. A, FIT Rpt. at LVMPD 000020–21; 78–80.) "The law firm had been retained by the Gomez family prior to officers locating the vehicle." (*Id.* LVMPD 00020.) LVMPD asked attorney Rodolfo Gonzalez "if

he knew how the vehicle came to be on his property, and he claimed he did not know." (*Id.*) Detectives seized the firm's security footage, and it showed Mr. Avila brought the truck to the firm on June 5, 2020. (*Id.*) "The footage also depicted two law firm employees, one of whom is presumed to be [attorney Edgar Flores], opening all the doors of the vehicle and looking through it. Shortly thereafter, [Jorge Luis] arrived and removed a garment bag from the vehicle and left. The vehicle remained unattended until patrol officers discovered it later that evening." (*Id.*).

Jorge Luis likely removed another rifle from the truck on June 5, 2020. When he towed the truck, Mr. Avila saw a 3-foot-long black case in the truck. (Ex. T, Avila Dep. 17:3 – 18:20.) That case was missing when LVMPD searched the truck. (Ex. Y, Crime Scene Investigation Rpt., LVMPD000625–26 (describing the items LVMPD found in the truck); Ex. Z, LVMPD's Photographs of the Truck, June 6, 2020, LVMPD003946; 3951–52; 3967.) The only explanation for the case's disappearance is that Jorge Luis removed it. He denies the truck contained a black case and claims he removed only his wallet and a work bag. (Ex. X, Jorge Luis Ans. to Squeo's Interrog. #1, May 21, 2021, 4:25–27; Ex. B, Jorge Luis Dep. 164:20 – 165:6; 160:20 – 161:7; 224:6 – 225:17; Ex. W, Jorge Luis Ans. to Squeo's Interrog. #12, Aug. 10, 2021, 3:5–10.)

The black case likely contained a different rifle that Jorge Antonio had carried at other protests. (Ex. AA, LVMPD001035–43 at 1038 (when LVMPD asked him who owned that other rifle, Jorge Luis said "he did not know if that was one of his."); Ex. B, Jorge Luis Dep. 62:15 – 63:2 (Jorge Luis owned the rifle that Jorge Antonio had when he died).) That other rifle may have had an illegal bump stock which Jorge Luis acknowledged once owning but supposedly destroyed. (Ex. B, Jorge Luis Dep., 59:6–16; 204:2–11; Ex. I, Jorge Luis Ans. to Squeo's Interrog. #14, Feb. 10, 2022, 4:14–19.) Indeed, the day before his death, Jorge Antonio said, "Bumpstocks win civil wars. Wonder why the govt tried so hard to ban them not long before" George Floyd's death. (Ex. BB, LVMPD 000993–1015 at LVMPD 001015.)

The missing black case could also have contained documents reflecting Jorge Antonio's plan to commit violent acts against the police. Shortly before his death, Jorge Antonio authored numerous messages showing he had been radicalized, denounced peaceful protesting, and endorsed

violence. (Ex. CC, Wolf Decl. ¶ 5; Ex. BB, LVMPD 993–1015.)[6] He believed the protests would "escalate into war" and that protesters needed to "[s]tay strapped. Gather ammo. Gather weapons." (Ex. BB, LVMPD 1000; 1003–5; 1010; 1012.) He accused the police of "pretend[ing] to help kids so they can rape them" and said protesters "need to riot." (*Id.* 1011.) He believed the system "hasn't changed in hundreds of years of peaceful protests" and endorsed violent protesting. (*Id.* 1012–13 ("[P]eacefully protesting gets you killed. Violent protests get you change.").) He believed "[t]hese cops dumb as f[**]k. And it's mostly white ones using their power for evil. I know there are other races, but 99% of cops in these videos violating rights . . . they're white. Plain and simple. The white pres is a pedophile. It's a white system for white people made by white people to oppress people of color." (*Id.* 1015.)

### 2. *Jorge Luis or His Counsel Failed to Preserve Documents*.

In yet another example of willful spoliation, Jorge Luis or his counsel at Gonzalez & Flores spoliated documents and communications related to the truck's towing. On June 5, 2020, someone from Gonzalez & Flores texted Mr. Avila about towing the truck. (Ex. T, Avila Dep. 11:4–8; 23:19 – 24:1.) That same day, a secretary at Gonzalez & Flores had Mr. Avila sign documents that she kept, and Mr. Avila gave the secretary a receipt. (*Id.* 24:3–21; 25:12 – 26:18.) Det. Squeo asked Plaintiffs to produce those materials, but Plaintiffs supposedly could not locate them. (Ex. EE, Pls.' Resp. to Squeo's Req. for Production ##7–12, Aug. 11, 2021, 4:4 – 5:22.)

### 2. *Jorge Luis's Spoliation Warrants Sanctions*.

This Court should enter terminating sanctions against Jorge Luis for willfully removing relevant evidence from the truck while litigation was anticipated and failing to preserve documents and communications related to the truck's towing. "A party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence. The duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to

---

[6] Ofc. Jefferson Grace impounded Jorge Antonio's iPhone at the scene and has been designated as a trial witness. (Ex. DD, LVMPD's Tenth Suppl. Discl., Jan. 24, 2022, 16:1–6.)

anticipated litigation." *Gonzalez v. Las Vegas Metro. Police Dep't*, No. 2:09-CV-00381-JCM-PAL, 2012 WL 1118949, at *5 (D. Nev. Apr. 2, 2012) (internal citation omitted). Spoliation is willful when done with "some notice" of the evidence's potential relevance. *Leon*, 464 F.3d at 959.

Jorge Luis had a duty not to remove evidence from the truck and to preserve the documents and communications related to the truck's towing, and his spoliation of that evidence is willful because he knew or should have known its potential relevance. When he removed evidence from the truck and his counsel exchanged documents and communications with Mr. Avila, Jorge Luis anticipated litigation because he had already retained Gonzalez & Flores. The missing black case is relevant to Jorge Antonio's whereabouts, plans, and state of mind on the night in question. The black case may have contained another rifle with an illegal bump stock or documents reflecting Jorge Antonio's plans to commit violent acts. That evidence would rebut Plaintiffs' argument that Jorge Antonio was a peaceful protester simply returning to his truck to go home when the shooting happened. The spoliated documents and communications related to the truck's towing are relevant to the truck's contents before Jorge Luis entered it and why he moved and entered the truck. Those materials are also relevant to when Jorge Luis learned of the truck's location and whether he lied to LVMPD when he claimed he did not know its location. (Ex. V, Sgt. Iacullo Decl. ¶ 4.)

Terminating sanctions are warranted because no lesser sanctions could restore the truck's contents or the lost documents and communications related to the truck's towing, adequately punish Jorge Luis, or sufficiently deter similar future conduct. Alternatively, if it were to decline to enter terminating sanctions, then this Court should presume the spoliated evidence would have been unfavorable to Jorge Luis or instruct the factfinder to infer the same. Independent evidence would corroborate a presumption or an inference that Jorge Luis removed a black case from the truck containing another rifle with an illegal bump stock and that Jorge Antonio had that weapon in the truck because he intended to commit violent acts (and, if he was truly headed toward his truck when the shooting happened, he may have planned to return to the courthouse with the other rifle equipped with the illegal bump stock).

### IV. CONCLUSION.

Det. Squeo respectfully requests that the Court enter the most severe sanction because

Plaintiffs' conduct was intentional, repetitive, and cannot be remedied through a lesser sanction.

DATED June 15, 2022.

MCNUTT LAW FIRM, P.C.

*/s/ Dan McNutt*
Daniel R. McNutt, Esq., Bar No. 7815
Matthew C. Wolf, Esq., Bar No. 10801
11441 Allerton Park Drive, #100
Las Vegas, Nevada 89135
*Counsel for Defendant John Squeo*

### CERTIFICATE OF SERVICE

The undersigned is an employee of McNutt Law Firm, P.C. and certifies that under FED. R. CIV. P. 5, on June 15, 2022, I served a true and correct copy of **MOTION FOR SANCTIONS FOR SPOLIATION** by mailing a copy by United States Postal Service, postage prepaid, via email, or via electronic mail through the United States District Court's CM/ECF system to the following at their last known address or e-mail:

Dale Galipo, Esq.
Eric Valenzuela, Esq.
LAW OFFICES OF DALE K. GALIPO
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
dalekgalipo@yahoo.com
evalenzuela@yahoo.com
*Counsel for Plaintiff*

Craig R. Anderson, Esq.
MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
canderson@maclaw.com
*Counsel for LVMPD Defendants*

　　　　　　　　　　　　　　　　*/s/ Lisa Heller*
　　　　　　　　　　　　　　　　An Employee of McNutt Law Firm, P.C.