1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7

JEANNE LLERA, *et al.*

Case No. 2:20-cv-01589-RFB-BNW

8

Plaintiffs,

**ORDER**

9

v.

10

LAS VEGAS METROPOLITAN POLICE
DEPARTMENT, *et al.*

11

12

Defendants.

13
14

## I.    INTRODUCTION

15

Before the Court are two motions: Defendants Dan Emerton, Vernon Ferguson, Ryan

16

Fryman, Andrew Locher, and Las Vegas Metropolitan Police Department's ("LVMPD") Motion

17

for Summary Judgment (ECF No. 68) and Defendant John Squeo's Motion for Summary Judgment

18

(ECF No. 70).

19

For the reasons stated below, Defendants Emerton, Ferguson, Fryman, Locher, and

20

LVMPD's motion is granted in part and denied in part, and Defendant Squeo's motion is also

21

granted in part and denied in part.

22
23

## II.    PROCEDURAL BACKGROUND

24

Plaintiffs Jeanne Llera and Jorge L. Gomez, parents of Decedent Jorge A. Gomez

25

("Decedent"), commenced this action on August 29, 2020, filing their complaint raising both

26

federal civil rights violations and state tort claims. ECF No. 2. Specifically, Plaintiffs alleged that

27

on June 1, 2020, Decedent was fatally shot and killed by law enforcement officers, after he

28

attended Black Lives Matter protests in downtown Las Vegas. Id. Plaintiffs raised the following

federal violations: violation of free speech and right to peaceful protest; unlawful search and seizure – excessive force; unreasonable search and seizure – denial of medical care; violation of substantive due process; municipal liability for unconstitutional practice or policy; municipal liability for failure to train, and municipal liability for ratification of misconduct. Id. Plaintiffs' complaint also raised two state law causes of action for battery and negligence, for which Plaintiffs sought wrongful death and survival damages. Id. On October 1, 2020, Defendant LVMPD, and Defendants Emerton, Ferguson, Fryman, and Locher (collectively, the "Shooting Officers") answered the compliant. ECF No. 11. Plaintiffs filed an Amended Complaint on February 17, 2021, substituting Defendant John Squeo for "Doe Defendant 1" in the original Complaint. ECF No. 21.[1] After a series of extensions, the Court set the discovery deadline for May 18, 2022, and ordered that any dispositive motions be filed by June 15, 2022. ECF No. 67.

On that day, Defendants LVMPD and the Shooting Officers filed their Motion for Summary Judgment. ECF No. 68. That same day, Defendant Squeo filed his own Motion for Summary Judgment. ECF No. 70.[2] Plaintiffs filed their Responses to both motions on July 27, 2022. ECF Nos. 90, 93. Defendants filed their Replies on August 23, 2022. ECF Nos. 102, 103.

A motion hearing was held regarding the instant motions for summary judgment on February 10, 2023. ECF No. 115.

This Order follows.

---

[1] In addition to suing in their individual capacities, Llera and Gomez are suing in their representative capacities as the court-appointed, co-special administrators of Decedent's estate. "Under section 1988, a section 1983 claim that accrued before death survives the decedent when state law authorizes a survival action as a suitable remed[y] . . . not inconsistent with the Constitution and laws of the United States. . . ." Smith v. City of Fontana, 818 F.2d 1411, 1416 (9th Cir. 1987), overruled on other grounds by Hodgers-Durgin v. de la Vina, 199 F.3d 1037 (9th Cir. 1999). Nevada Revised Statute § ("NRS") 41.100(3) "extends the right to bring a survival action only to the official representatives of an individual's estate," and NRS 41.085 grants "both heirs and estate representatives the right to bring a state law wrongful death cause of action." Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 370 (9th Cir. 1998), as amended (Nov. 24, 1998). The Court does not construe Plaintiffs' operative complaint as improperly alleging certain causes of action in their individual capacities.

[2] Defendant Squeo additionally filed a Motion for Sanctions. ECF Nos. 77. On June 16, 2022, LVMPD and the Shooting Officers filed a joinder to the Motion for Sanctions. ECF No. 83. The motion was denied. See ECF No. 119.

### III.   FACTUAL BACKGROUND

#### a.  Undisputed Facts

Based on its review of the evidence on the record, the Court finds the following undisputed facts.

On the evening of June 1, 2020, Decedent, who is 25 years old, attends a Black Lives Matter protest near Las Vegas Boulevard and Fremont Street, following the murder of George Floyd by police officers in Minneapolis, Minnesota. To get there, Decedent drove his father Jorge L. Gomez's vehicle and parked the vehicle around 400 South 4th Street, near the Lloyd D. George Federal Courthouse ("Courthouse").

Video footage from the protest shows Decedent open carrying a handgun in a holster, a rifle slung on his back, and wearing a tactical vest with several back packs on him. Nevada is an Open Carry state.[3]

At 10:51 PM, LVMPD issues dispersal orders to the protestors on or near Las Vegas Boulevard and Fremont Street. Pursuant to the dispersal order, protesters are told, and permitted, to walk in a few directions, including southbound on Las Vegas Boulevard. At 11:19 PM, LVMPD officer Shay Mikalonis is shot in the neck by a protestor near the Circus Circus Hotel, roughly three miles away.

The Shooting Officers are experienced officers working with LVMPD's Firearm Tactics and Training Unit ("FTTU"). At approximately 11:19 PM, FTTU is driving southbound on Las Vegas Boulevard as a three-car unit, when Defendant Fryman orders the unit to stop just south of Bridger Avenue on the west side of Las Vegas Boulevard so that the officers can prepare their tactical gear to respond to the situation at Circus Circus Hotel. At around 11:20 PM, Decedent walks southbound on the east side of Las Vegas Boulevard from Bridger Avenue towards the Courthouse front steps. Several LVMPD officers and federal marshals are stationed on the Courthouse steps. One of those stationed, and wielding a beanbag shotgun, is LVMPD detective

---

[3] "[W]hoever knowingly possesses or causes to be present a firearm or other dangerous weapon in a Federal court facility, or attempts to do so, shall be fined under this title, imprisoned not more than 2 years, or both." 18 U.S.C. § 930(e)(1) (emphases added). There is no factual assertion by the parties that Decedent was in, or attempted to enter, the Courthouse on this day with any of these weapons.

Defendant Squeo.

Video footage shows Decedent paused for roughly 18 seconds while walking southbound on Las Vegas Boulevard, near the Courthouse's open-air parking lot. He then walks around the pylons surrounding the Courthouse staircase. Another protestor, Rayce Rayos, walks at a distance behind him, with a skateboard in his hand. Around 20 seconds into Decedent's walk around the pylons, he stops and places both hands in front of his body, clasped together; a few seconds later, Rayos comes to a halt, still moving around somewhat behind him. Seconds later, Rayos quickly turns and walks northbound. In contrast, Decedent continues southbound down Las Vegas Boulevard, walking slowly, placing one foot in front of the other, until he disappears from the video camera's view.[4] At this point, the video footage does not show Decedent's position. Approximately twenty seconds later, however, Decedent returns in view, this time running northbound on the Las Vegas Boulevard sidewalk, outside the pylons near the Courthouse steps. Seconds later, Decedent falls to the pavement, after Defendant Squeo shoots at him with beanbag projectiles. Decedent gets up, and seconds later, is collectively shot by the Shooting Officers at least twenty times.

After the lethal shots were fired, Defendant Fryman requested medical units to respond to the scene where Decedent was shot. Decedent is pronounced dead.

There is no video footage provided by the parties that captures what conversation, if any, Decedent had with any Defendant in this case.

### b. Disputed Facts

The parties dispute the following facts.

Whether Decedent points his rifle or any firearm at anyone, including the Shooting Officers; whether Decedent grabs a firearm (chiefly, the rifle over his left shoulder) in Defendant Squeo's presence or the Defendant Shooting Officers' presence; whether LVMPD officers are trained to give a verbal warning prior to firing the less than lethal shotgun when feasible; whether,

---

[4] There is other video footage of the encounter taken from different angles, but none provide the clear footage necessary to ascertain an undisputed account of what happens the moment Decedent disappears from the view of this instant video footage, including with respect to his encounter with Defendant Squeo, before he is visibly captured, seconds later, running northbound.

when deploying beanbag projectiles, LVMPD officers are trained to announce, when feasible, that they are going to be using the less lethal force before firing, to avoid sympathetic or contagious fire from nearby officers who may mistake the sound of the beanbag shotgun for a lethal gun; whether Decedent falls down as a result of being hit with beanbag projectiles that Defendant Squeo fired at him or because he trips; whether Defendant Squeo speaks to Decedent before firing beanbag rounds at him, and if so, what is said; whether Decedent communicates to Defendant Squeo or to an officer near Defendant Squeo that he is trying to reach his car which is parked south of Defendant Squeo's Courthouse position; whether Defendant Squeo or another officer at the Courthouse tells Decedent to keep moving or he would be arrested, or if Defendant Squeo or any other officer at the Courthouse steps tell Decedent to "turn around, turn the fuck around" and go in the other direction, or words to that effect; whether Defendant Squeo is aware or should be aware that there is a dispersal order, issued two blocks north of his position at the Courthouse, pursuant to which protesters are walking south along Las Vegas Boulevard; whether Decedent has anything in his hands while he is in Defendant Squeo's presence or field of vision; how frequently and at which precise moments the non-officer witnesses turn around to see Decedent after Defendant Squeo shoots him with non-lethal beanbags; whether there are officers chasing Decedent after the Courthouse incident, and if they were carrying clearly visible orange "low lethal shotguns"; whether Decedent is in any way turned to face the Defendant Shooting Officers while running north on Las Vegas Boulevard after Defendant Squeo shoots beanbag projectiles at him; whether any submitted video footage is clear enough to make out whether Decedent points a gun at Defendant Squeo, the Defendant Shooting Officers, or any other civilian at any time between his interaction with Squeo and when he is fatally shot; and whether the Defendant Shooting Officers shot Decedent because they mistook the beanbag projectiles for lethal gunshots or because Decedent pointed a gun at them.

## IV.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a); <u>accord</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322(1986). When considering
the propriety of summary judgment, the court views all facts and draws all inferences in the light
most favorable to the non-moving party. <u>Gonzalez v. City of Anaheim</u>, 747 F.3d 789, 793 (9th Cir.
2014). If the movant has carried its burden, the non-moving party "must do more than simply show
that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a
whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine
issue for trial." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation
marks omitted). It is improper for the Court to resolve genuine factual disputes or make credibility
determinations at the summary judgment stage. <u>Zetwick v. County of Yolo</u>, 850 F.3d 436, 441
(9th Cir. 2017) (citations omitted).

## V.   DISCUSSION

As a preliminary matter, the Court notes that Plaintiffs only chose to defend certain claims
in responding to the Motions for Summary Judgment. The Court addresses those claims that were
defended, and as discussed below, deems all other claims to be abandoned by Plaintiffs.

### a.   Section 1983 Claims

To make out a prima facie case under 42 U.S.C. § 1983, a plaintiff must show that a
defendant: (1) acted under color of law, and (2) deprived the plaintiff of a constitutional right.
<u>Borunda v. Richmond</u>, 885 F.2d 1384, 1391 (9th Cir. 1989).

#### i.   Free Speech Right to Peaceful Protest (First Cause of Action)

In their Amended Complaint, Plaintiffs raised a First Amendment retaliation claim against
all individual defendants. During the hearing on the instant motions, Plaintiffs conceded that they
waived this cause of action as to the Shooting Officers. Therefore, the Court analyzes this claim
only as to Squeo.

##### 1.   Squeo

"As a general matter the First Amendment prohibits government officials from subjecting
an individual to retaliatory actions for engaging in protected speech. If an official takes adverse

action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim." <u>Nieves v. Bartlett</u>, 139 S. Ct. 1715, 1722 (2019) (citations, brackets, and internal quotation marks omitted).

To succeed on a claim for First Amendment retaliation under § 1983, Plaintiffs must show (1) [Decedent] was engaged in a constitutionally protected activity, (2) the officer's actions would "chill a person of ordinary firmness from continuing to engage in the protected activity," and (3) "the protected activity was a substantial or motivating factor in the Officer's conduct." <u>Index Newspapers LLC v. U.S. Marshals Serv.</u>, 977 F.3d 817, 827 (9th Cir. 2020). A "plaintiff pressing a retaliatory arrest claim must [also] plead and prove the absence of probable cause for arrest." <u>Id.</u> at 1724. If Plaintiffs establish the lack of probable cause, then they must show "that the retaliation was a substantial or motivating factor behind the [arrest], and, if that showing is made, the defendant can prevail only by showing that the [arrest] would have been initiated without respect to retaliation." <u>Hill v. City of Fountain Valley</u>, 70 F.4th 507, 518 (9th Cir. 2023).

Plaintiffs argue that Defendant Squeo engaged in retaliatory action against Decedent. At the time Decedent interacted with Squeo and the other officers with him, Decedent was still protesting police brutality on the sidewalk in front of the Courthouse steps. Indeed, by walking southbound on Las Vegas Boulevard, Decedent was complying with the dispersal order issued roughly twenty minutes earlier at the Las Vegas Boulevard and Fremont Street intersection two blocks north of the Courthouse. Squeo admits he did not know what way the protesters were asked to disperse by his colleagues two blocks north. Furthermore, Defendant Squeo's own briefing suggests that Defendant Squeo "told [Decedent] he needed to keep moving" and then nearly immediately "told him he was under arrest and to raise his hands." Although Plaintiffs dispute whether Squeo even placed Decedent under arrest in the first place, they argue that, if he had, the arrest was retaliatory.

A First Amendment retaliation claim is only viable if the plaintiff was engaged in First Amendment protected activity. In complying with the dispersal order issued further north on Las Vegas Boulevard, Decedent was walking southbound, along the pylons near the Courthouse stairs,

Decedent appeared to be "walking in kind of a funny manner," leading right into his interaction with Defendant Squeo. The parties dispute whether this "walking in kind of a funny manner" constitutes First Amendment protected activity.

Defendant Squeo makes two main arguments to argue that this distinct walking did not constitute protected activity. First, at the time the dispersal order was issued, the protest ended; Decedent was merely failing to comply with orders given to him by both Squeo and the officers posted on the Courthouse steps at the time of the incident. Second, Squeo argues that Plaintiffs' own use of force expert conceded there is no evidence Defendant Squeo shot Decedent with beanbag projectiles for exercising his First Amendment rights.

During the motion hearing, Plaintiffs clarified their position as to Decedent's distinct walk, explaining that by slowly walking, heel to toe, Decedent was exercising a kind of protected speech outside a Courthouse, a site where the parties agree protests had taken place a few days earlier.

The Court finds that there are disputes of material fact that prevent it from granting Defendant Squeo summary judgment as to Plaintiffs' First Amendment retaliation claim. Construing the facts on the record in Plaintiffs' favor: on the night he was fatally shot by law enforcement, Decedent was participating in a Black Lives Matter protest, protesting police brutality. While engaging in this activity, he was carrying weapons, including a rifle over his left shoulder. Nevada of course is an open carry state. And while protesters were prohibited from carrying items like bats, rocks, and other projectiles, they were not prohibited from carrying firearms.

Assuming the facts in the light most favorable to Plaintiffs, Decedent, like many other protestors, complied with a dispersal request at roughly 11:10 PM and was walking back to his car. There were over 15 police vehicles along Las Vegas Boulevard, when Decedent was walking southbound on Las Vegas Boulevard and when he was told by Squeo and the Courthouse officers to go in a different direction, or to turn around. Decedent expressed his views against complying with Squeo's order through, one, verbal communication and, two, by choosing not to turn around and instead walking southbound, making exaggerated, slow heel-to-toe steps. In response, Defendant Squeo shot Decedent with beanbag projectiles.

There is no camera footage of Decedent's interaction with Defendant Squeo or the other officers on the Courthouse steps, and there are disputes of fact as to the interaction between Squeo and the Decedent, including what was said and by whom. A non-officer witness stated that Decedent did not comply with the order because "[Decedent] was adamant about expressing his rights," and that he communicated to Squeo why he should be allowed to walk southbound (getting to his car).

The Ninth Circuit has acknowledged that it is unreasonable to fire non-lethal projectiles "against individuals suspected of . . . minor criminal activity," who engaged in "only passive resistance, and posed little to no threat of harm to others." Nelson v. City of Davis, 685 F.3d 867, 885 (9th Cir. 2012). Additionally, under Ninth Circuit case law, a person can be slow to comply to commands because they are conflicting, and that failure to comply for a few seconds after a command is issued is not grounds for arrest. Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1094 n.7 (9th Cir. 2013) (finding that there were "simultaneous conflicting commands to 'get back' and to 'stop'—orders with which [plaintiff] at least partially complied—and the tasing," and that "[plaintiff] was visibly frozen with fear").

Contrary to Defendant Squeo's argument, the dispersal order issued at Las Vegas Boulevard and Freemont Street did not terminate Decedent's First Amendment right to express himself—in this instance, his views regarding the police, rules of law enforcement, and the rules governing his movement after the dispersal order. It is well established that the "First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." City of Houston v Hill, 482 U.S. 451, 461 (1987). There is no objective or irrefutable evidence about what Decedent or Defendant Squeo said in their brief interaction before Decedent was fatally shot by the Shooting Officers. Instead, there is conflicting testimony about what Decedent said to the officers stationed on the Courthouse steps.

Taking all this into account, and assuming the undisputed and disputed facts in Plaintiffs' favor, a jury could find that Decedent was engaged in First Amendment protected conduct. Specifically, Decedent engaged in passive resistance when he walked in a slow, exaggerated way in the direction of his car (in compliance with the dispersal order issued by LVMPD officers at

Fremont Street). See Texas v. Johnson, 491 U.S. 397, 404 (1989) ("In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether [a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." (internal quotation marks omitted)).

Next, a jury could find that Defendant Squeo's conduct would chill this type of protected activity. Indeed, arresting Decedent for not immediately complying with confusing commands (to disperse in one direction and move out in the opposite direction) would "chill a person of ordinary firmness from continuing to engage in the protected activity. Ford v. City of Yakima, 706 F.3d 1188, 1193 (9th Cir. 2013) ("This Court has recognized that a retaliatory police action such as an arrest or search and seizure would chill a person of ordinary firmness from engaging in future First Amendment activity."). The same would be true regarding his conduct firing projectiles at Decedent. Cf. Black Lives Matter Seattle-King Cnty. v. City of Seattle, Seattle Police Dep't, 466 F. Supp. 3d 1206, 1213-14 (W.D. Wash. 2020) (finding that the "use of less-lethal, crowd control weapons . . . would chill a person of ordinary firmness from protesting"); Anti Police-Terror Project v. City of Oakland, 477 F. Supp. 3d 1066, 1088 (N.D. Cal. 2020) (finding "the use of projectiles and tear gas, had a chilling effect on the political speech of the protestors").

Finally, the third element of First Amendment retaliation claim—whether a plaintiff's protected activity was a substantial or motivating factor in the defendant's conduct—requires the defendant's motive "be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." Nieves, 139 S. Ct. at 1722. This element may be satisfied "with either direct or circumstantial evidence." Index Newspapers, 977 F.3d at 827.

A jury could find that Defendant Squeo would not have shot projectiles at Decedent "but for" Decedent's conduct engaging in First Amendment protected activity during the protest. First, Plaintiffs' presentation of the facts on the record, assumed in their favor for purposes of this instant motion, is that protestors, including non-officer witnesses in this case, were ordered by Defendant Squeo and other officers on the Courthouse steps to "turn around." And these protestors

- 10 -

immediately turned around when the officers pointed at them with guns. In return, Defendant Squeo shot projectiles at Decedent: a.) for his failure to immediately comply with orders that conflicted with the dispersal order, b.) for talking back to the officers when they ordered him to turn around as he walked along the sidewalk adjacent to the Courthouse steps, and, c.) for walking strangely and slowly. Defendant Squeo's retaliatory conduct occurred during the protest. This short "proximity in time between" between Decedent's conduct and Defendant's Squeo's retaliatory conduct supports an inference that Defendant Squeo retaliated against Decedent in violation of his First Amendment rights. Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 744 (9th Cir. 2001).

Second, the Court may consider reasonable inferences drawn from the evidence that there was no reason for Defendant Squeo to have engaged in the retaliatory conduct towards Decedent other than his protest conduct. Compare Jones v. City of Los Angeles, No. 2:20-CV-11147-FWS-SK, 2023 WL 2558789, at *14 (C.D. Cal. Jan. 24, 2023) (finding evidence of the defendant officer's "numerous firings of his less-lethal launcher, aiming at protestors, and violations of LAPD policy regarding less-lethal launchers, show he fired in [the plaintiff]'s direction because he disagreed with [the] [p]laintiff and the other protestors' criticism of police practices"); Black Lives Matter, 466 F. Supp. 3d at 1214 ("The use of indiscriminate weapons against all protesters— not just the violent ones—supports the inference that SPD's actions were substantially motivated by [the] [p]laintiffs' protected First Amendment activity.") with Collins v. Jordan, 110 F.3d 1363, 1371 (9th Cir. 1996) (noting that public sidewalks are public fora where restrictions on First Amendment activity is subject to greater scrutiny); id. at 1372 ("The courts have held that the proper response to potential and actual violence is for the government to ensure an adequate police presence and to arrest those who actually engage in such conduct, rather than to suppress legitimate First Amendment conduct as a prophylactic." (internal citation omitted)).

Here, assuming the facts in Plaintiffs' favor, Decedent was not breaking the law when Defendant Squeo shot him, rather, he was engaging in First Amendment protected activity. See Duran v. City of Douglas, 904 F.2d 1372, 1377 (9th Cir. 1990) (affirming denial of summary judgment to officer on First Amendment claim where record showed no "legitimate, articulate

reason" for officer to have arrested plaintiff); see also Anti Police-Terror Project, 477 F. Supp. 3d at 1088 (finding "some of the aggressive conduct described in the declarations, such as shooting a reporter with a rubber bullet even though it does not appear she was engaged in illegal activity or posed a threat of any kind, raises a serious question as to whether some of the uses of force described in those declarations was in reaction to the anti-police message of the protests and aimed at intimidating protesters to deter such speech"). As such, Defendant Squeo attempted to arrest Decedent without probable cause. See Nieves, 139 S. Ct. at 1724; Hill, 70 F.4th at 518. Indeed, if a plaintiff shows that a defendant "lacked probable cause, that showing bridges the causal gap by reinforc[ing] the retaliation evidence and show[ing] that retaliation was the but-for basis" of their official's actions. Capp v. County of San Diego, 940 F.3d 1046, 1056 (9th Cir. 2019).

Thus, a jury could find that Defendant Squeo violated Plaintiffs' First Amendment right to be free from retaliation for engaging in protected First Amendment activities during the June 2020 protest.[5]

### 2.  Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Qualified immunity is an immunity from suit rather than a defense to liability, and "ensures that officers are on notice their conduct is unlawful before being subjected to suit." Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014). In deciding whether officers are entitled to qualified immunity, courts consider, taking the facts in the light most favorable to the non-moving party, whether (1) the facts show that the officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly established at the time. Id.

Under the second prong, courts "consider whether a reasonable officer would have had fair notice that the action was unlawful." Id. at 1125 (internal quotation marks omitted). "This requires two separate determinations: (1) whether the law governing the conduct at issue was clearly

---

[5] To emphasize, the Ninth Circuit has recognized that a First Amendment analysis "involves questions of fact that normally should be left for trial." Index Newspapers, 977 F.3d at 827. Here, there are material questions of fact undergirding Plaintiffs' First Amendment retaliation claim against Defendant Squeo that should be resolved at trial.

established and (2) whether the facts as alleged could support a reasonable belief that the conduct in question conformed to the established law." <u>Green v. City & County of San Francisco</u>, 751 F.3d 1039, 1052 (9th Cir. 2014). A government official's conduct "violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 741 (2011) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)). While a case directly on point is not required for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." <u>Id.</u> Further, the right must be defined at "the appropriate level of generality," and a court "must not allow an overly generalized or excessively specific construction of the right to guide [its] analysis." <u>Cunningham v. Gates</u>, 229 F.3d 1271, 1288 (9th Cir. 2000); <u>see also</u> <u>al-Kidd</u>, 563 U.S. at 741-42. The plaintiff bears the burden of proving that the right was clearly established. <u>Tarabochia</u>, 766 F.3d at 1125.

Moreover, where genuine issues of material fact exist, a court must address a claim of qualified immunity by resolving all factual disputes in the non-moving party's favor. <u>Ellins v. City of Sierra Madre</u>, 710 F.3d 1049, 1064 (9th Cir. 2013); <u>Coles v. Eagle</u>, 704 F.3d 624, 629 (9th Cir. 2012). Summary judgment must be denied where a genuine issue of material fact exists that prevents a finding of qualified immunity. <u>Sandoval v. Las Vegas Metro. Police Dep't</u>, 756 F.3d 1154, 1160 (9th Cir. 2014). As already discussed, taking the facts in the light most favorable to Plaintiffs, a jury could conclude that Defendant Squeo's conduct violated Decedent's First Amendment rights. The question therefore becomes whether these rights were clearly established at the time of the violation. The Court finds they were.

First, it was clearly established by June 2020 that expressive conduct intended to convey a particularized message and that could be interpreted to convey a specific message is protected First Amendment activity. <u>See</u> <u>Beck v. City of Upland</u>, 527 F.3d 853, 871 (9th Cir. 2008) ("By 1990, it was "well established . . . that government officials in general, and police officers in particular, may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity. Surely anyone who takes an oath of office knows—or should know—that

much"); id. ("[T]here is a clearly established First Amendment right to challenge the police. Even when crass and inarticulate, verbal challenges to the police are protected."); see also Rumsfeld v. F. for Acad. & Instn'l Rights, Inc., 547 U.S. 47, 65-66 (2006) (summarizing the extent to which expressive conduct is protected by the First Amendment). It was also clearly established that it is "unreasonable to use pepper spray, projectile beanbags, and pepper ball projectiles against individuals 'who were suspected of only minor criminal activity, offered only passive resistance, and posed little to no threat of harm to others.'" Black Lives Matter, 466 F. Supp. 3d at 1214 (quoting Nelson, 685 F.3d at 885).

Second, it was also clearly established by June 2020 that the "First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in First Amendment protected conduct. Capp, 940 F.3d at 1059; Virginia v. Black, 538 U.S. 343, 358 (2003) ("The First Amendment affords protection to symbolic or expressive conduct as well as to actual speech."). Furthermore, it was also clearly established that a First Amendment retaliatory arrest—even if supported by probable cause—could violate the First Amendment. See Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995); Ford, 706 F.3d at 1195-96. Here, it is disputed whether Squeo shouted out that Decedent was under arrest and for what reason, let alone whether there was probable cause for such an arrest. There is also a dispute of material fact as to why the beanbag projectiles were deployed, and a jury could reasonably conclude that Squeo's use of intermediate force was retaliatory because it came within minutes of Decedent's verbal self-expression and Decedent's exaggeratedly slow steps. These disputed material issues of fact, which the Court may not resolve at this stage, prevent the Court from finding that Defendant Squeo is entitled to qualified immunity on Plaintiff's First Amendment claim. See Sandoval, 756 F.3d at 1160; cf. Reed v. Lieurance, 863 F.3d 1196, 1207 n.4 (9th Cir. 2017) ("In this case, the factual disputes that preclude a finding that, as a matter of law, [the] [defendant] acted with probable cause also preclude a finding that he had arguable probable cause." (emphasis added)).

Therefore, the Court does not find that, at this juncture, Defendant Squeo is entitled to qualified immunity as a matter of law. Accordingly, the Court denies Defendant Squeo's Motion for Summary Judgment in his favor as to Plaintiffs' First Cause of Action.

### ii.  Excessive Force (Second Cause of Action)

Whether an officer's use of force constitutes a violation of the Fourth Amendment turns upon whether the officer's conduct was reasonable under the circumstances. Jones v. Las Vegas Metro. Police Dep't, 873 F.3d 1123, 1130 (9th Cir. 2017). In determining whether a particular use of force was unreasonable and thus in violation of the Fourth Amendment, a court is to consider: "(1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion." Williamson v. City of National City, 23 F.4th 1146, 1151 (9th Cir. 2022) (citing Graham v. Connor, 490 U.S. 386, 397 (1989)).

"These factors are non-exhaustive," and courts must "examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in Graham." Estate of Lopez by & through Lopez v. Gelhaus, 871 F.3d 998, 1006 (9th Cir. 2017); see also Kingsley v. Hendrickson, 576 U.S. 389 (2015) ("[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" (quoting Graham, 490 U.S. at 396)). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Estate of Lopez, 871 F.3d at 1006.

"An officer may reasonably use deadly force when he 'has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer[s] or to others.'" Estate of Martinez v. City of Fed. Way, 105 F. App'x 897, 898 (9th Cir. 2004) (citing Tennessee v. Garner, 471 U.S. 1, 11 (1985)). In considering "whether there was an immediate threat, a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to just such a concern." Mattos v. Agarano, 661 F.3d 433, 441 (9th Cir. 2011) (en banc) (internal quotation marks omitted); see also Estate of Lopez, 871 F.3d at 1005 (noting that whether the someone poses an immediate threat is the important factor under Graham).

### 1.  The Shooting Officers

The Court finds that the type and amount of force inflicted on Decedent was undisputedly

1  severe: the Shooting Officers collectively fired 20 shots at Decedent, fatally wounding him. A. K.

2  H by & through Landeros v. City of Tustin, 837 F.3d 1005, 1011 (9th Cir. 2016) (finding the use

3  of deadly force by a shooting officer was "extreme" and "unmatched"). Thus, this consideration

4  weighs in Plaintiffs' favor.

5        Next, assuming the facts in the light most favorable to Plaintiffs, the Court finds that in

6  terms of the most crucial factor for the reasonableness of lethal force identified in Graham—

7  whether the victim posed a threat to the officers or anyone else—favors Plaintiffs as well. "Law

8  enforcement officials may not kill suspects who do not pose an immediate threat to their safety or

9  to the safety of others simply because they are armed." Harris v. Roderick, 126 F.3d 1189, 1204

10  (9th Cir. 1997). Yet, "where a suspect threatens an officer [or others] with a weapon such as a gun

11  or a knife, the officer is justified in using deadly force." Smith v. City of Hemet, 394 F.3d 689,

12  704 (9th Cir. 2005).

13        Here, Decedent was running down a city block only seconds after being shot with beanbags

14  by Defendant Squeo when he is shot 20 times by the Shooting officers. Defendants maintain that,

15  because there was a fourteen second gap between the last beanbag projectile shot and the 20 shots

16  fired by the Shooting Officers, the Shooting Officers did not mistake the beanbag projectiles for

17  lethal gun fire. This therefore supports their version of the facts that Decedent pointed a gun at

18  them, posing an immediate threat of harm. Defendants' reliance on this alleged fourteen second

19  gap misses the mark and it inappropriately asks the Court to weigh evidence in their favor. As they

20  acknowledge, the dispositive inquiry is whether Decedent was an immediate threat to the officers

21  or others around him. Of course, Shooting Officers assert that it is their "testimony that [Decedent]

22  raised and pointed his rifle their direction." But "if [Decedent] did not raise his rifle towards

23  [them], an immediate threat did not exist." As the Defendant Shooting Officers acknowledge in

24  relying on the video footage to put forth this fourteen second gap in time theory, none of the

25  footage is clear enough to show whether Decedent did or did not point his rifle at the officers. And

26  the Court will not, at this stage, weigh in its place the credibility of either the "Shooting Officers'

27  testimony" or of third-party witnesses to find Decedent posed an immediate threat. In the end, as

28  discussed below, there are genuine disputes of material fact as to whether Decedent posed a threat

to the Shooting Officers.

For example, Plaintiffs argue that the video footage shows that Decedent (1) was not aware of the Shooting Officers or their position at the southeast corner of Las Vegas Boulevard and Bridger Avenue and (2) that he did not turn towards the officers, let alone point a weapon at them. Furthermore, the Shooting Officers did not issue a warning before firing at Decedent, and they had no previous interaction with or information about Decedent prior to shooting twenty rounds at him. Video footage from the incident, while unclear, does not refute Plaintiffs' position that Decedent did not point any gun at the Shooting Officers. In addition to the footage, there is also expert and witness deposition testimony that contradicts the Shooting Officers' testimony. For instance, Plaintiffs' expert stated during his deposition that he had reviewed "over 12,000 autopsies," and that neither Decedent's face nor his body was turned toward the Shooting Officers at that time he was shot. As the Shooting Officers conceded at the motion hearing that, whether Decedent held a gun in his hand and pointed it at the Shooting Officers, is the critical fact in evaluating Plaintiffs' Fourth Amendment claim as to these Defendants.

Ultimately, the Court is unable to rule that Decedent pointed or did not point a weapon at the Shooting Officers as a matter of law on the record before it. The role of the jury is to weigh the evidence and assign credibility themselves. Additionally, in this Circuit, in a case involving a Decedent, the Court must be mindful that juries lack the perspective of the Decedent, and it is therefore the Court's role to "ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story –the [decedent] – is unavailable." Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994).

Finally, based on the availability of less than lethal alternatives that Defendants failed to use before shooting, a jury could find that the use of deadly force was unreasonable. See Glenn, 673 F.3d at 876 (finding that police are required to consider what other tactics if any were available, and clear, reasonable and less intrusive alternatives to the force employed militates against finding the use of force reasonable).

As non-movants, Plaintiffs have met their burden of setting forth disputed facts that, if weighed in their favor at trial, would establish a constitutional violation.

### 2. Squeo

Clear Ninth Circuit precedent supports Plaintiffs' position that Defendant Squeo's use of force was excessive.

First, in terms of the type and amount of force inflicted on Decedent, Defendant Squeo shot multiple beanbag rounds at Decedent, which in turn also caused Decedent to fall to the ground as he was running away from the shots. "The force applied through use of a beanbag round, or "cloth-cased shot," "can kill a person if it strikes his head or the left side of his chest at a range of under fifty feet." Deorle v. Rutherford, 272 F.3d 1272, 1279 (9th Cir. 2001). And although the beanbag "shot falls short of deadly force," it nevertheless "constitutes force which has the capability of causing serious injury, and in some instances does so." Id. at 1208. "Such force, though less than deadly, is not to be deployed lightly. To put it in terms of the test we apply: the degree of force used by [the defendant] is permissible only when a strong governmental interest compels the employment of such force." Id.; see, e.g., Glenn v. Washington County, 673 F.3d 864, 871-80 (9th Cir. 2011) (holding that use of less-lethal beanbags against plaintiff was unreasonable even though the plaintiff had a weapon, because plaintiff made no threatening gestures and did not pose imminent threat of harm to anyone).

Taking the facts in the light most favorable to Plaintiffs, Decedent did not pose a significant threat to any officer, or any bystander, and he was not assaultive or aggressive. A jury could find that, by walking in the direction he was instructed to by LVMPD officers to the north, Decedent was left with a confusing choice. And that he chose to walk slowly, and exaggeratedly, in the same direction he was ordered to disperse to, also the direction where his vehicle was parked, rather than follow an order dispatched with profane language to "turn the fuck around." At no point did Decedent have the gun or bat in his hand, and he never raised or pointed either. Decedent was attempting to flee from Defendant Squeo, but that was not until Defendant Squeo, without warning, began to shoot Decedent with multiple beanbag rounds. At most, Decedent's conduct, while he was near the area of the Courthouse steps, could be described as passive or "obstructive resistance": walking slowly and stopping, and not engaging verbally with the officer. Defendant Squeo failed to take advantage of the less forceful alternatives available to him. To be sure,

LVMPD policy states that projectile weapons should only be used against persons who are an imminent threat of harm to officers or others. Assuming the facts in the light most favorable to Plaintiffs, Decedent did not pose such a threat, imminent or otherwise; Defendant Squeo, furthermore, failed to warn Decedent before firing the beanbag projectile rounds. Even assuming Defendant Squeo was effectuating an arrest (and there is disputed deposition testimony to that effect), there were less lethal means to do it, which further renders his chosen method of force (intermediate, less-lethal) an unreasonable means of accomplishing the arrest. Nelson, 685 F.3d at 877-878, 883. It is well settled that officers need not employ the least intrusive means available so long as they act within a range of reasonable conduct. See Henrich, 39 F.3d at 915. The available lesser alternatives, however, are relevant to ascertaining that reasonable range of conduct. See Bryan, 630 F.3d at 831. Lastly, Defendant Squeo's counsel conceded at the hearing that "there's no dispositive video of what [Decedent] was doing in the second that [Defendant] [Squeo] fired the first beanbag round."

As with the Defendant Shooting Officers, a jury could find that the balance between the gravity of the intrusion on Decedent outweighed the government's need for that intrusion, and that Defendant Squeo accordingly violated Decedent's constitutional right to be from excessive force.

### 3. Qualified Immunity

#### a. The Shooting Officers

Here, as to the first prong of qualified immunity, Plaintiffs have shown that Defendants' conduct described above violated a constitutional right. Again, based on Plaintiffs' assertions supported by the undisputed facts and disputed facts assumed in Plaintiffs' favor, Defendants violated Decedent's Fourth Amendment right by using unjustified lethal force against him when he posed no threat to the officers. He did not raise his gun or make any threatening movements or gestures when the officers gave no warning before shooting Decedent.

As for the second prong of the qualified immunity inquiry, Plaintiffs have also met their burden. They have shown that the Defendant Shooting Officers violated a clearly established right. Indeed, it has been clearly established in this Circuit for over twenty years that law enforcement officers may not kill an armed suspect that does "not pose an immediate threat to their safety or to

1  the safety of others." See Harris, 126 F.3d at 1204.

2          What is more, based on the material facts in dispute underlying this cause of action against

3  the Shooting Officers, the Court finds it is premature to decide whether the officers are entitled

4  qualified immunity. See Sandoval, 756 F.3d at 1160; e.g., Orn v. City of Tacoma, 949 F.3d 1167,

5  1181 (9th Cir. 2020) (denying qualified immunity because what the defendant "most forcefully

6  contests is whether his alternative account of the shooting should be accepted as true," and

7  explaining that "[f]actual disputes of that order must be resolved by a jury, not by a court

8  adjudicating a motion for summary judgment").

9          The Court therefore denies the Shooting Officers qualified immunity and summary

10  judgment in their favor as to Plaintiffs' second cause of action.

11                                          **b. Squeo**

12          In light of the material facts in dispute, Squeo is also not entitled to qualified immunity, at

13  this juncture. See Espinosa v. City & County of San Francisco, 598 F.3d 528, 532 (9th Cir. 2010)

14  (affirming a denial of summary judgment on qualified immunity grounds because "there are

15  genuine issues of fact regarding whether the officers violated [the] [plaintiff's] Fourth Amendment

16  rights[, which] are also material to a proper determination of the reasonableness of the officers'

17  belief in the legality of their actions"); see also Santos v. Gates, 287 F.3d 846, 855 n.12 (9th Cir.

18  2002) (finding it premature to decide the qualified immunity issue "because whether the officers

19  may be said to have made a 'reasonable mistake' of fact or law may depend on the jury's resolution

20  of disputed facts and the inferences it draws therefrom" (internal citation omitted)). Construing the

21  facts on the record in Plaintiffs' favor, a jury could find that Squeo violated Decedent's Fourth

22  Amendment rights because Decedent did not have a gun in his hands, was complying with a

23  dispersal order issued two blocks north, was at most passively resisting Squeo's order to "turn

24  around, turn the fuck around," i.e., proceed back in the direction Decedent had been ordered to

25  disperse from. And Defendant Squeo failed to employ any other form of intervention before using

26  intermediate force despite the fact that Decedent did not represent an "imminent threat of harm."

27  The Court finds it is premature to decide qualified immunity as to this cause of action against

28  Defendant Squeo. See Sandoval, 756 F.3d at 1160.

1    Thus, the Court denies Defendant Squeo qualified immunity and summary judgment as to

2    this cause of action as well.

3    ### iii.  Denial of Medical Care (Third Cause of Action)

4    Plaintiffs fail to respond to Defendants' opposition to their Third Cause of Action. They

5    have therefore abandoned this cause of action. Coleman v. Bank of New York Mellon, 798 F.

6    App'x 131, 132 (9th Cir. 2020) (finding that claims are abandoned "by failing to provide any

7    argument regarding these claims" in opposition to motions for summary judgment). The Court

8    finds that there are no genuine issues of material fact that the Shooting Officers did not deny

9    Decedent proper medical care after they shot him.

10    Accordingly, the Court grants summary judgment on this cause of action in favor of the

11    Defendant Shooting Officers.[6]

12    ### iv.  Substantive Due Process (Fourth Cause of Action)

13    The Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or

14    property, without due process of law[.]" U.S. Const. amend. XIV. It encompasses a "constitutional

15    right to associate with family members." Lipscomb By & Through DeFehr v. Simmons, 884 F.2d

16    1242, 1244 (9th Cir. 1989). "A decedent's parents and children generally have the right to assert

17    substantive due process claims under the Fourteenth Amendment." Wheeler v. City of Santa Clara,

18    894 F.3d 1046, 1057 (9th Cir. 2018).

19    "A claim asserting that police officers violated [a parent's] Fourteenth Amendment rights

20    during a police shooting must show that the officers' conduct shocks the conscience." Ochoa v.

21    City of Mesa, 26 F.4th 1050, 1056 (9th Cir. 2022).[7] "There are two tests used to decide whether

22    officers' conduct shocks the conscience, turning "on whether the officers had time to deliberate

23    their conduct." Id. "On one hand, the deliberate-indifference test applies if the situation at issue

24    evolve[d] in a time frame that permits the officer to deliberate before acting." Id. "On the other

25    hand, the purpose-to-harm test applies if the situation at issue escalate[d] so quickly that the officer

26    _____

27    [6] This cause of action was not alleged against Defendant Squeo.

28    [7] "This standard differs from a Fourth Amendment inquiry. . . . [T]here may be a Fourth Amendment violation
because of an unreasonable use of force, but the circumstances may not rise to the level of a Fourteenth Amendment
shock the conscience violation." Tan Lam v. City of Los Banos, 976 F.3d 986, 1003 (9th Cir. 2020).

[had to] make a snap judgment." Id. "The purpose to harm standard is a heightened standard and a subjective standard of culpability." Perez v. City of Fresno, 591 F. Supp. 3d 725, 763 (E.D. Cal. 2022). Here, Plaintiffs assert both tests apply to the individual Defendant officers' conduct against Decedent.

### 1. The Shooting Officers

The Court finds that the purpose to harm standard should be applied to this cause of action as asserted against the Shooting Officers. Because here, it is undisputed that Decedent was armed and fleeing at the time the Shooting Officers fired shots at him, the facts of this case mirror the spirit of cases where a situation evolves quickly and forces an officer to respond. See e.g., County of Sacramento v. Lewis, 523 U.S. 833, 853-54 (1998) (rejecting deliberate indifference standard for high-speed chases).

The Court agrees with Defendants that Plaintiffs have not shown, based on the facts in the record, that there is a dispute of material fact as to this claim that weighs against granting the Shooting Officers' summary judgment in their favor. "The purpose to harm standard is a subjective standard of culpability and an officer violates the due process clause if he used force with only an illegitimate purpose in mind. An officer acts with a legitimate purpose when he acts with the objectives of arrest, self-defense, or the protection of the public in mind, while he acts with an illegitimate purpose if he acts with the objectives to bully a suspect or get even." Tan Lam, 976 F.3d at 1003-04 (internal citations omitted). Here, even assuming the Shooting Officers used unreasonable force against Decedent, Plaintiffs have failed to show the Shooting Officers acted without a legitimate purpose. Plaintiffs assert that a jury could find that the Shooting Officers shot at Decedent to retaliate against him for a separate, unrelated shooting that occurred at Circus Circus Hotel that night. This assertion is speculative at best, as they point to no evidence on the record from which a jury could find such a purpose existed.

### 2. Squeo

The question for the Court is whether the purpose to harm or the deliberate indifference test applies to this cause of action as alleged against Defendant Squeo for his conduct against Decedent. Defendant Squeo argues there was no time for deliberation, therefore the purpose to

harm test applies. In contrast, if actual deliberation was practical, "an officer's deliberate indifference may suffice to shock the conscience, and the plaintiff may prevail by showing that the officer disregarded a known or obvious consequence of his action." Nicholson v. City of Los Angeles, 935 F.3d 685, 692-93 (9th Cir. 2019) (internal quotations marks and citation omitted). Assuming the facts in the light most favorable to Plaintiffs, the Court finds it appropriate to apply the deliberate indifference test to this cause of action as asserted against Defendant Squeo. Cf. id. at 694 ("assuming [p]laintiffs' contentions that [the person holding the toy gun] was not pointing [it] at anyone and had not given any indication that he was likely to harm anyone, there was no rapidly escalating confrontation or extreme emergency here that would have deprived [the defendant officer] of the opportunity to confer with his partner and formulate a plan to ascertain what was happening before charging in with gunfire").

The Court, however, finds it appropriate to grant Defendant Squeo summary judgment in his favor against this cause of action. Plaintiffs argue that, based on Plaintiffs' facts, a jury could find that Defendant Squeo's conduct "shocks the conscience" because he acted with "deliberate indifference" causing Decedent's death. This is especially so, if the jury finds the officers killed Decedent as revenge or to get even for the other officer who had just been shot by the Circus Circus Hotel. Not only do Plaintiffs fail to point to evidence on the record regarding this revenge or "get even" purpose, but these arguments, conclusory in nature, fail to support a conclusion that a jury could find that Defendant Squeo himself "disregarded a known or obvious consequence" of his actions against Decedent. See Patel v. Kent Sch. Dist., 648 F.3d 965, 974 (9th Cir. 2011) ("Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."); id. ("The state actor must recognize[ ] [an] unreasonable risk and actually intend[ ] to expose the plaintiff to such risks without regard to the consequences to the plaintiff. In other words, the defendant knows that something is going to happen but ignores the risk and exposes [the plaintiff] to it." (internal citation omitted)).

Therefore, the Court grants summary judgment on this cause of action in the Defendant Shooting Officers and Defendant Squeo's favor.

///

### v. Municipal Liability Based Claims (Fifth, Sixth, and Seventh Causes of Action)

Plaintiffs allege three separate municipal liability causes of action against Defendant LVMPD. The Court finds, however, that Plaintiffs have abandoned all three causes of action because they do not respond to Defendants' opposition to these causes of action. See Coleman v. Bank of New York Mellon, 798 F. App'x 131, 132 (9th Cir. 2020) (finding that claims are abandoned when a party fails to "provide any argument regarding these claims" in opposition to motions for summary judgment). As such, the Court finds that the evidence on the record does not support a finding that Defendant LVMPD is municipally liable for any of the individual Defendant officers' conduct.

Therefore, the Court grants summary judgment in Defendant LVMPD's favor on Plaintiffs' Fifth, Sixth, and Seventh Causes of Action.

### b. State Law Based Claims

Plaintiffs assert a few state law claims. NRS 41.085(2) provides for such causes of action "[w]hen the death of any person . . . is caused by the wrongful act or neglect of another." Plaintiffs assert two wrongful death/survival based state law causes of action against Defendants: one for battery and the other for negligence. Before addressing whether material disputes of fact exist as to these causes of action to warrant denying summary judgment, the Court first addresses Defendant LVMPD and Defendant Squeo's assertions that they are entitled to discretionary-act immunity against these causes of action.

### i. Discretionary-Act Immunity

Under NRS 41.032(2), no action can be brought against an officer or employee of the state or any of its agencies or political subdivisions "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved is abused." A state actor raising this defense must show (1) that the questioned decision involved personal judgment, choice, or deliberation and (2) that the decision was based on considerations of social, economic, or political policy. Martinez v. Maruszczak, 168 P.3d 720, 722, 728-29 (Nev. 2007).

- 24 -

Here, Plaintiffs' negligence cause of action asserts that Defendant LVMPD negligently trained and supervised the officers with respect to their use of force against Decedent during the protest. Courts in this district, relying on guidance from the Ninth Circuit, have held that NRS § 41.032(2) bars claims against Defendant LVMPD for negligent hiring, training, and supervision. See Neal-Lomax v. Las Vegas Metro. Police Dep't, 574 F. Supp. 2d 1170, 1192 (D. Nev. 2008), aff'd, 371 F. App'x 752 (9th Cir. 2010) ("Because Nevada looks to federal case law to determine the scope of discretionary immunity, and because federal case law consistently holds training and supervision are acts entitled to such immunity, LVMPD is entitled to discretionary immunity on this claim."); accord Vasquez-Brenes v. Las Vegas Metro. Police Dep't, 51 F. Supp. 3d 999, 1013 (D. Nev. 2014), rev'd and remanded on other ground, 670 F. App'x 617 (9th Cir. 2016). The Nevada Supreme Court, looking to federal analogues, has also affirmed summary judgment in Defendant LVMPD's favor against a negligent hiring, training, and supervision claim based on discretionary-act immunity. See, e.g., Paulos v. FCH1, LLC, 456 P.3d 589, 595-96 (Nev. 2020) ("First, LVMPD's decision to hire and train [the] [officer] involved an element of choice under prong one of the Berkovitz-Gaubert test. Second, a decision on whether to train officers about getting suspects off the hot asphalt during summer months once it is reasonably safe to do so is subject to policy analysis, thus meeting prong two of the test."). As Plaintiffs have not established that LVMPD engaged in a deliberate unconstitutional policy or practice, the Court finds that Plaintiffs' negligence claim against Defendant LVMPD for negligent hiring, training, and supervision fails as a matter of law. Accordingly, Defendant LVMPD is entitled to discretionary-act immunity against Plaintiffs' negligence cause of action premised on negligent hiring, training, and supervision.

Defendant Squeo, however, is not entitled to discretionary-act immunity as to any of Plaintiffs' causes of action. There are two limitations on discretionary-act immunity. First, immunity does not attach for actions taken in bad faith. Falline v. GNLV Corp., 823 P.2d 888, 891 (1991); Davis v. City of Las Vegas, 478 F.3d 1048, 1059 (9th Cir. 2007). For instance, in the context of an arrest involving allegedly excessive force, an officer's action may be in bad faith if motivated by "hostility toward a suspect or a particular class of suspects . . . or because of a willful

or deliberate disregard for the rights of a particular citizen or citizens." Davis, 478 F.3d at 1060. Second, acts taken in violation of the Constitution cannot be considered discretionary. Mirmehdi v. United States, 689 F.3d 975, 984 (9th Cir.2011); Nurse v. United States, 226 F.3d 996, 1002 (9th Cir.2000). "[I]n general, governmental conduct cannot be discretionary if it violates a legal mandate." Nurse, 226 F.3d at 1002 (interpreting the FTCA's discretionary function exception, which mirrors Nevada's discretionary-act immunity test).

Here, Plaintiffs have asserted that Defendant Squeo's use of force—which is the basis for the state law claims—violated Decedent's constitutional rights. Accordingly, Defendant Squeo is denied discretionary-act immunity on Plaintiffs' state law causes of action. See Koiro v. Las Vegas Metro. Police Dep't, 69 F. Supp. 3d 1061, 1074 (D. Nev. 2014), aff'd, 671 F. App'x 671 (9th Cir. 2016) (denying discretionary-act immunity based on alleged constitutional violation).[8]

### ii.   Battery (Eighth Cause of Action)

Plaintiffs' battery cause of action asserts that Defendants intentionally shot Decedent multiple times with both non-lethal and lethal rounds causing him to die from his injuries.

"A battery is an intentional and offensive touching of a person who has not consented to the touching." Humboldt Gen. Hosp. v. Sixth Jud. Dist. Ct., 376 P.3d 167, 171 (Nev. 2016). "Under Nevada law, police officers 'are privileged to use that amount of force which reasonably appears necessary,' and are liable only to the extent they use more force than reasonably necessary." Tuuamalemalo v. Greene, 946 F.3d 471, 478 (9th Cir. 2019) (quoting Ramirez v. City of Reno, 925 F. Supp. 681, 691 (D. Nev. 1996)). Thus, whether deadly force constitutes a battery in Nevada is analyzed under the same standard as the Fourth Amendment excessive force claim. See Ramirez, 925 F. Supp. at 691. Here, because there are issues of material fact with respect to Plaintiffs' excessive force cause of action, issues of fact also exist as to whether Defendants intentionally or offensively touched Decedent without his consent.

Therefore, the Court denies Defendants summary judgment in their favor as to Plaintiffs' battery cause of action.

---

[8] Defendants do not argue that the Shooting Officers are entitled to discretionary-act immunity. Even if they did, the Court would also find, for the same reason Defendant Squeo is not, that they too are not entitled to this immunity.

### iii.  Negligence (Ninth Cause of Action)

Plaintiffs' negligence cause of action asserts that the Shooting Officers and Squeo acted negligently in detaining, arresting, and using force against Decedent, and that Defendant LVMPD is vicariously liable for this conduct. Defendants assert that this cause of action fails as a matter of law because both Defendant Squeo and the Shooting Officers intentionally shot at Decedent.

To prevail on negligence cause of action, a plaintiff must generally show that: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injury; and (4) the plaintiff suffered damages. Scialabba v. Brandise Const. Co., Inc., 921 P.2d 928, 930 (Nev. 1996). Generally, "state officials have a duty to exercise ordinary care in performing their duties." Butler ex rel. Biller v. Bayer, 168 P.3d 1055, 1065 (Nev. 2007). Under Nevada law, vicarious liability requires "proof that (1) the actor at issue was an employee, and (2) the action complained of occurred within the scope of the actor's employment." Rockwell v. Sun Harbor Budget Suites, 925 P.2d 1175, 1179 (Nev. 1996); see also Busch v. Flangas, 837 P.2d 438, 440 (Nev. 1992) (respondeat superior liability available for negligent conduct).[9]

This cause of action should proceed to trial. First, parties may present "different theories of relief based on the same facts." Countrywide Home Loans, Inc. v. Thitchener, 192 P.3d 243, 248 (Nev. 2008). Plaintiffs' battery cause of action relates to specific elements of Defendants' conduct, while the negligence cause of action sweeps more broadly. Moreover, Defendants have not provided the Court with any binding or persuasive authority that the negligence and battery causes of action are mutually exclusive and cannot be alleged together as a matter of law. Second, it is undisputed that Defendant LVMPD employed the individual Defendant officers during the protest, and that their conduct arose during the course of that employment. Furthermore, incorporating by reference the Court's excessive force analysis above, genuine issues of material fact exist regarding whether the Defendant Shooting Officers and Defendant Squeo acted

---

[9] But cf. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("There is no respondeat superior liability under section 1983."); Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (holding that "[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

negligently using force against Decedent. The reasonableness of the officers' conduct, in these circumstances, is therefore a question for the jury.

Thus, the Court must deny summary judgment in Defendants' favor on Plaintiffs' negligence cause of action.

## VI.    CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants Dan Emerton, Vernon Ferguson, Ryan Fryman, Andrew Locher, and Las Vegas Metropolitan Police Department's Motion for Summary Judgment (ECF No. 68) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Defendant John Squeo's Motion for Summary Judgment (ECF No. 70) is **GRANTED** in part and **DENIED** in part.

The motions are **GRANTED** as to the First Cause of Action against the Defendant Shooting Officers; as to the Third Cause of Action in its entirety; as to the Fourth Cause of Action in its entirety; as to the Fifth Cause of Action in its entirety; as to the Sixth Cause of Action in its entirety; and as to the Seventh Cause of Action in its entirety, and the Ninth Cause of Action negligence cause of action premised on any negligent hiring, training, and supervision claim.

The motions are **DENIED** as to the First Cause of Action against Defendant Squeo; as to the Second Cause of Action in its entirety; as to the Eighth Cause of Action in its entirety; and as to the Ninth Cause of Action in its entirety, except as premised on a negligent hiring, training, and supervision claim. These causes of action shall proceed to a jury trial.

**IT IS FURTHER ORDERED** that the parties shall submit a joint pretrial order **within three (3) weeks** from the date of this Order.

**DATED:** September 30, 2023



**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**