LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo (Pro Hac Vice Ca. Bar No. 144074)
Eric Valenzuela (Pro Hac Vice Bar No. 284500)
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Tel: (818) 347-3333 | Fax: (818) 347-4118
Email: dalekgalipo@yahoo.com, evalenzuela@galipolaw.com

GONZALEZ & FLORES LAW FIRM
Rodolfo Gonzalez, Esq. (Nevada Bar No. 12751)
Edgar Flores, Esq. (Nevada Bar No. 13130)
879 N. Eastern Ave.
Las Vegas, NV 89101
Tel: 702-778-3030 | Fax: 702-920-8657
Email: Rodolfogonzalezlaw@gmail.com, Edgarfloreslaw@gmail.com

CLAGGETT & SYKES LAW FIRM
Sean Claggett, Esq.(Nevada Bar No. 008407)
Steve Lewis, Esq. (Nevada Bar No. 7064)
4101 Meadows Lane, Suite 100
Las Vegas, NV 89107
Tel: 702-655-2346 | Fax: 702-655-3763
*Email:* Sean@claggettlaw.com, Steve@claggettlaw.com

*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA (LAS VEGAS)**

| | |
|---|---|
| JEANNE LLERA, et al., | Case No. 2:20-cv-01589-RFB-BNW |
| Plaintiffs, | **PLAINTIFFS' TRIAL BRIEF RE: DISPERSAL ORDERS** |
| vs. | |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al., | |
| Defendants. | |

1    The Plaintiffs do not dispute that a lawful dispersal order was issued at the
2 intersection of Freemont and Las Vegas Blvd.  Plaintiffs do not dispute that this
3 dispersal order was communicated to Det. Squeo via the police radio.  Plaintiffs
4 dispute that the dispersal order given in the area of Freemont and Las Vegas Blvd.,
5 applies to any protest activity in front of the Federal Courthouse.
6    The area of Freemont and Las Vegas Blvd. is probably the famous tourist
7 location other then the hears of the Las Vegas Blvd. strip.  People go to Freemont and
8 Las Vegas Blvd. to people watch, have drinks, watch street performers and see street
9 artists sell their art.  It is somewhat similar to the Venice Beach strip in California.
10 The area of Freemont and Las Vegas Blvd. is a Nevada landmark and may be one of,
11 if not the most popular tourist locations in Nevada.
12    The area in front of the Federal Courthouse is a significantly different area.
13 Obviously, the Federal Courthouse is a historically important area where people
14 protest.  Unlike the area of Freemont and Las Vegas Blvd., people do not go to the
15 area of the Courthouse to people watch, to have drinks, or to visit popular tourist
16 locations in Nevada.  The area of the Courthouse is where important federal
17 government buildings are located such as the Courthouse and the Foley Building right
18 across the street.  In addition to these significant differences, the Courthouse is
19 approximately 2 ½ - 3 blocks away from the intersection of Freemont and Las Vegas
20 Blvd.
21    Before a dispersal order can be given, law enforcement must first declare that
22 there is an unlawful assembly.  Only after this has occurred, that police may then issue
23 a dispersal order.  Here, an unlawful assembly had been declared and communicated
24 to the nearby protestors, when the protest in the area of Freemont and Las Vegas Blvd.
25 had gotten out of control including vandalism and throwing objects at police officers.
26 The protestors then dispersed after the dispersal order had been given.  After the
27 protests dispersed the area of Freemont and Las Vegas Blvd. they did not begin to
28 vandalize and throw objects at the police officers in front of the stairs of the

Courthouse. In fact, Decedent was almost by himself when he was in the area of the Courthouse. If the conduct which was occurring at the area of Freemont and Las Vegas Blvd., which formed the basis of the dispersal order, was no longer occurring at a different area or location, such as the Courthouse, then an individual would be allowed to engage in a Constitutionally protected activity. Dispersal orders must be limited in scope and time and the conduct and area that was the basis of the dispersal order was no longer present in the area of the Courthouse when Decedent was engaging in protest activity such as walking very slow, stopping in front of the steps and not leaving from in front of the Courthouse. The Federal Courthouse is its own significant landmark, just as is the area of Freemont and Las Vegas Blvd. and the dispersal order given at that intersection does not preclude protestors from lawfully assembling in a different area, such as the Courthouse or even the LVMPD headquarters. Here Decedent was engaged in protest conduct/activity when he was shot several times by bean bags rounds fired by Squeo because Decedent did not leave the area in front of the Courthouse.

The case of *Collins v. Jordan*, 110 F.3d 1363 (9th Cir. 1996) seems to be the prevailing case in this Circuit on this issue. Activities such as demonstrations, protest marches, and picketing are clearly protected by the First Amendment. *Edwards v. South Carolina*, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); *Thornhill v. Alabama*, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); *NAACP Western Region v. City of Richm ond*, 743 F.2d 1346 (9th Cir.1984). It has been clearly established since time immemorial that city streets and sidewalks are public fora. *E.g., United States v. Grace*, 461 U.S. 171, 177, 103 S.Ct. 1702, 1706–07, 75 L.Ed.2d 736 (1983); *Hague v. C.I.O.*, 307 U.S. 496, 515, 59 S.Ct. 954, 963–64, 83 L.Ed. 1423 (1939) (opinion of Roberts, J.); *accord Gaudiya Vaishnava Society v. City and County of San Francisco*, 952 F.2d 1059, 1065 (9th Cir.1990). Speech that stirs passions, resentment or anger is fully protected by the First Amendment. *Terminiello v. Chicago*, 337 U.S. 1, 4, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1949) ("[A] function of free speech under our system

of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger."). *Collins v. Jordan*, 110 F.3d 1363, 1371 (9th Cir. 1996). Thus, it is clearly established federal and state law that protests or assemblies cannot be dispersed on the ground that they are unlawful unless they "are violent or ... pose a clear and present danger of imminent violence," *id*., or they are violating some other law in the process, *Collins*, 110 F.3d at 1371. For a First Amendment retaliation claim, Plaintiffs are required to show that they were engaged in a constitutionally protected activity, the Defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and the protected activity was a substantial or motivating factor in the law enforcement Defendants' conduct. *Id*., citing, *Pinard v. Clatskanie Sch. Dist*. 467 F.3d 755, 770 (9th Cir. 2006).

The law is clear that First Amendment activity may not be banned simply because prior similar activity led to or involved instances of violence. Collins, 110 F.3d at 1372. Plaintiffs contend that Defendants violated their First Amendment rights. The First Amendment protects, among other things, "freedom of speech" and "the right of the people to peaceably assemble." U.S. Const. amend. I. It is well established that this includes activities such as demonstrations and protest marches. Id. at 1371 (citing *Edwards v. South Carolina*, 372 U.S. 229, 235, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963)). With respect to First Amendment activities in public spaces, the government may only impose reasonable content-neutral restrictions on the time, place, and manner of protected speech taking place in public forums. *Capitol Square Review and Advisory Bd. v. Pinette*, 515 U.S. 753, 761, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995). With respect to First Amendment activities in public spaces, the government may only impose reasonable content-neutral restrictions on the time, place, and manner of protected speech taking place in public forums. *Capitol Square Review and Advisory Bd.*, 515 U.S. at 761 (1995). Consequently, the First Amendment does not prohibit dispersing protests or assemblies if they are violent or

pose a clear and present danger of imminent violence or are they are violating some other law in the process. Collins, 110 F.3d at 1371 (internal citations and quotation marks omitted) (cleaned up). Whether a particular situation presents a clear and present danger of imminent lawlessness must be evaluated under an objective standard, rather than based on the subjective apprehensions of the officers. *Johnson v. Perry*, 859 F.3d 156, 171 (2d Cir. 2017) (stating that "[f]ear of serious injury cannot alone justify suppression of free speech and assembly" and that "there must be reasonable ground to fear that serious evil will result" (emphasis omitted) (citation omitted)). Moreover, in assessing whether a sufficient clear and present danger justifies dispersal of a crowd, "[i]t is the tenor of the demonstration as a whole that determines whether the police may intervene; and if it is substantially infected with violence or obstruction the police may act to control it as a unit." *Wash. Mobilization Comm. v. Cullinane*, 566 F.2d 107, 120, 184 U.S. App. D.C. 215 (D.C. Cir. 1977) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 116, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972)). Accordingly, the question here is whether the conduct of the persons in the Free Speech Zone, taken as a whole, created objectively reasonable grounds to conclude that there was a "clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order." *Cantwell v. Connecticut*, 310 U.S. 296, 308, 60 S. Ct. 900, 84 L. Ed. 1213 (1940); see also *Grayned*, 408 U.S. at 116, 92 S.Ct. 2294 ("[W]here demonstrations turn violent, they lose their protected quality as expression under the First Amendment."); see also *Puente v. City of Phoenix.*, 123 F.4th 1035, 1062 (9th Cir. 2024) (finding that *Collins* has suggested the First Amendment does not support unlawful assembly declarations based on violence, or a threat of violence, which occur amongst a few individuals in or around an otherwise peaceful assembly."); see also *Bidwell v. Cnty. of San Diego*, 607 F. Supp. 3d 1084, 1095–96 (S.D. Cal. 2022), aff'd 2023 U.S. App. LEXIS 29751, at *3, 2023 WL 7381462 (9th Cir. Nov. 8, 2023) (collecting cases).

1
2    Respectfully submitted,
3
4    DATED: October 26, 2025          THE LAW OFFICES OF DALE K. GALIPO
5
6
                                      By:  /s/ *Eric Valenzuela*
7                                          Eric Valenzuela
                                           Attorneys for Plaintiffs
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing PLAINTIFFS' TRIAL BRIEF RE DISPERSAL ORDERS with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 27th day of October, 2025.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system to:

**Marquis Aurbach**
Craig R. Anderson, Esq.
Nevada Bar No. 6882
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
canderson@maclaw.com
Attorneys for Defendants LVMPD, Ofc. Fryman, Ofc. Emerton, Ofc. Ferguson and Ofc. Locher

**McNutt Law Firm, P.C.**
Daniel R. McNutt, Esq.
Nevada Bar No. 7815
Matthew C. Wolf, Esq.
Nevada Bar No. 10801
625 S. Eighth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-1170
Facsimile: (702) 384-5529
drm@mcnuttlawfirm.com
mcw@mcnuttlawfirm.com
Attorneys for Defendant John Squeo