LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo (Pro Hac Vice Ca. Bar No. 144074)
Eric Valenzuela (Pro Hac Vice Bar No. 284500)
21800 Burbank Boulevard, Suite 310
Woodland Hills, California  91367
Tel: (818) 347-3333 | Fax: (818) 347-4118
Email: dalekgalipo@yahoo.com, evalenzuela@galipolaw.com

*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA (LAS VEGAS)

| | |
|---|---|
| JEANNE LLERA, et al., | Case No. 2:20-cv-01589-RFB-BNW |
| Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR STATUTORY ATTORNEYS' FEES** |
| vs. | *Filed concurrently with supporting declarations and exhibits* |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al., | |
| Defendants. | |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

On November 3, 2025, the jury in this matter reached a verdict against Defendants John Squeo and Ryan Fryman and the Las Vegas Metropolitan Police Department ("LVMPD") and in favor of Plaintiffs Jeanne Llera, Jorge L. Gomez and the Estate of Jorge A. Gomez, on Plaintiffs' First Amendment claim for violating Decedent's rights and their Fourth Amendment claim for excessive force and their state law claim for battery.  The jury awarded Plaintiffs damages totaling $6.5 million.  As the prevailing party, Plaintiffs now request attorneys' fees pursuant

to 42 U.S.C. § 1988, in the amount of **$1,445,625**. The statutory attorney fee award is justified by the significant verdict in Plaintiffs' favor, the importance of this case in terms of First Amendment and Fourth Amendment Constitutional rights at issue, Plaintiffs' counsels' skill and experience in the civil rights field, the difficulties and complexities of this case, and the risk assumed by Plaintiffs' counsel. Plaintiffs litigated this case for over five years, with diligence and dedication to vindicating Decedent's constitutional rights, ultimately culminating in a tremendously favorable result for Plaintiffs. Police misconduct lawsuits such as the instant matter advance the significant public benefit of deterring abuse by law enforcement officers who would otherwise operate free of any meaningful restraints. The instant case exemplifies that, but for competent willing counsel, police misconduct would have gone without consequences. For these reasons and those set forth in detail below and in the accompanying declarations, Plaintiffs' counsels are well deserving of the full amount of the attorneys' fees requested herein.

## II.    PLAINTIFFS ARE ENTITLED TO FEES UNDER 42 U.S.C. § 1988

### A. Plaintiffs Are the Prevailing Party Entitled to Attorneys' Fees Under 42 U.S.C. § 1988.

Plaintiffs prevailed on their claims under the First and Fourth Amendment and their state law battery claim, as the jury issued a verdict in their favor and awarded Plaintiffs $6.5 million dollars in damages. (See Judgment, Doc. 266). They are therefore entitled to prevailing party fees and expenses under 42 U.S.C. § 1988(b). *See Davis v. Prison Health Svcs.*, No. C 09–2629, 2012 WL 4462520 at *8 (N.D. Cal. Sept. 25, 2012) (citing *Herrington v. Cty. Of Sonoma*, 883 F.2d 739, 743 (9th Cir. 1989)).

**B. Legislative History of 42 U.S.C. § 1988.**

The Civil Rights Attorney's Fees Awards Act of 1976, codified as 42 U.S.C. § 1988, was enacted to encourage competent counsel to undertake and enforce civil rights cases by assuring them that if they were successful in vindicating federally protected rights, they would be paid in the same manner as "is traditional with attorneys compensated by feepaying clients," even when the results obtained are entirely non-pecuniary or solely of nominal pecuniary value. *See* Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Session, reprinted in 1976 U.S. Code Cong. & Ad. News 5908. Section 1988 clearly provides that "[i]n any action or proceeding to enforce a provision of section[]…1983…the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee."

Congress has recognized that "civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain." *Id.* at 5910. "[T]he citizen who must sue to enforce the law has little or no money with which to hire a lawyer," thus, "citizens must have the opportunity to recover what it costs them to vindicate these rights in court." *Id.* Given this purpose, courts have long established that a court's discretion to deny attorney's fees to a successful civil rights litigant "is very narrow and…fee awards should be the rule rather than the exception." *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2009), *overruled on other grounds by Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014); *see also Sethy v. Alameda County Water Dist.*, 602 F.2d 894, 897 (9th Cir. 1979) ("Congress plainly intended that successful Plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.").

The application for attorneys' fees "must be liberally construed to achieve Congress' purpose to encourage compliance with and enforcement of the civil rights laws." *Collins v. Chandler Unified Sch. Dist.*, 644 F.2d 759, 764 (9th Cir. 1981)

(citation omitted).  Justice Brennan opined that "[n]ot to award counsel fees in cases such as this would be tantamount to repealing the Act itself by frustrating its basic purpose."  *Hall v. Cole*, 412 U.S. 1, 13 (1973).  The difficulty for citizens to stand up to the police is great, especially considering the disparity in funding.  *See id.* "An award in these circumstances serves the purposes of the Act for two reasons: (1) the award encourages the legal services organization to expend its limited resources in litigation aimed at enforcing the civil rights statutes; and (2) the award encourages potential defendants to comply with civil rights statutes."  *Dennis v. Chang*, 611 F.2d 1302, 1306 (9th Cir. 1980).

### C. The Supreme Court's Standard in *Hensley v. Eckerhart*.

In *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), the Supreme Court held that the purpose of 42 U.S.C. § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances.  Courts have repeatedly held that attorneys in civil rights suits are entitled to recover their full fees and costs if they achieve meaningful and substantial relief, even if they do not prevail on every theory or against every party.  *Bouman v. Block*, 940 F.2d 1211, 1237 (9th Cir. 1991).  "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters."  *Hensley*, 461 U.S. at 435.  Otherwise, attorneys would be discouraged from taking on high risk cases such as this one.  *Id.*; *see also Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995); *Serrano v. Unruh*, 32 Cal. 3d 621 (1982); *Guam Society of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 700 (9th Cir. 1996) (Plaintiff cannot be faulted for their thoroughness in pleading related claims).

A full fee is one that encourages the vindication of constitutional and statutory rights through recovery of all time spent on the case, calculated at private market rates. It must ensure that attorneys are paid for all the time they devote to the

litigation. It is not limited by the number of causes of action on which relief is awarded, or the amount of damages recovered. *See City of Riverside v. Rivera*, 477 U.S. 561 (1986). Parsing discrete issues according to their relative importance or outcome is disfavored because doing so would require the trial court to make mini-determinations of prevailing party status on each dispute. *See Brewster v. Dukakis*, 786 F.2d 16, 18 (1st Cir. 1986). Once a plaintiff has been determined to be the prevailing party, he is entitled to all reasonable time spent:

> Where 'the plaintiff's claims of relief . . . involve a common core of facts or [are] based on related legal theories,' so that 'much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'

*Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988) (quoting *Hensley*, 461 U.S. at 435 (1983)). Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence. *See Gates v. Deukmjian*, 987 F.2d 1392, 1405 (9th Cir. 1992); *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992), modified on other grounds (9th Cir. 1993) 984 F.2d 345; *National Ass'n of Corder v. Gates*, 688 F. Supp. 1418, 1422 (C.D. Cal. 1988), aff'd in part and rev'd in part 947 F2d 374 (9th Cir. 1991); *see also Fair Housing of Marin v. Combs*, 285 F.3d 899, 908 (9th Cir. 2002); *Schwarz v. Secretary of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995).

### D. Plaintiffs Are the Prevailing Party

Plaintiffs are the prevailing party in this litigation, and judgment was entered in Plaintiffs' favor on their claims under the First Amendment, the Fourth Amendment and their state law battery claim. The jury awarded Plaintiffs a total of $6.5 million in damages. Under 42 U.S.C. § 1988, civil rights plaintiffs who have

1  prevailed on some significant issue in their litigation are entitled to an award of fees.

2  *See*, *e.g.*, *Hensley*, 461 U.S. at 433; *Chavez v. City of Los Angeles*, 47 Cal. 4th 970,

3  989 (2010) (citing *Hensley* and indicating that California law was "consistent" with

4  it). Once the fee entitlement threshold has been crossed, the prevailing plaintiff's fee

5  award is based upon the lodestar method. "[T]he number of hours reasonably

6  expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461

7  U.S. at 433. "Where a plaintiff has obtained excellent results, his attorney should

8  recover a fully compensatory fee. Normally this will encompass all hours reasonably

9  expended on the litigation, and indeed in some cases of exceptional success an

10  enhanced award may be justified." *Hensley*, 461 U.S. at 435. The appropriate rate is

11  the "market rate," which is demonstrated by the moving party submitting

12  "satisfactory evidence in addition to the attorney's own affidavit that the requested

13  rates are in line with those prevailing in the community for similar services by

14  lawyers of reasonably comparable skill, experience and reputation." *Blum v.*

15  *Stenson*, 465 U.S. 886, 896 n.11 (1984). Such a rate "is normally deemed to be

16  reasonable, and is referred for convenience as the prevailing market rate." *Id.*

17      The Supreme Court in *Texas Teachers v. Garland School Dist.*, 489 U.S. 782,

18  792 (1989) expressly held that *Hensley* sets forth the appropriate test for

19  determining a plaintiff's prevailing party status. In determining whether a plaintiff

20  has succeeded on any significant issue in litigation, the *Garland* Court looked at

21  whether the relief on the merits of plaintiff's claim changes the legal relationship

22  between plaintiff and defendant. Applying this test, the Court in *Farrar v. Hobby,*

23  506 U.S. 103, 114 (1992), held that a money judgment in favor of the plaintiff for

24  any amount modified the defendant's behavior in a way that benefits the plaintiff by

25  forcing the defendant to pay an amount that would otherwise not be paid.

26

27

28

### III.    PLAINTIFFS' "LODESTAR" IS APPROPRIATE AND REASONABLE

"In the Ninth Circuit, the method of determining the permissible amount of attorneys' fees under § 1988 is the 'lodestar' method." *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). The lodestar method multiples the number of hours the prevailing party reasonably expended on litigation by a reasonable hourly rate. *Id.* (quoting *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995)) (quotations omitted). After computation, courts then assess whether it is necessary to adjust the lodestar figure on the basis of the twelve *Kerr* factors. *Id.* (citations omitted). These twelve factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). "[T]here is a strong presumption" that the lodestar calculation "is a reasonable fee." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 405 (9th Cir. 1990) (citing *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987)).

### A. Counsels' Hours Are Reasonable given the Time and Labor Required and Preclusion from Other Employment.

The total number of hours for which Plaintiffs' counsel request compensation, to be reflected in their declarations and billing logs, is reasonable. Under Ninth Circuit law, every hour reasonably spent on the case is compensable. See *Beaty v. BET Holdings, Inc.*, 222 F.3d 607, 612 (9th Cir. 2000) (Attorneys who take FEHA cases "ordinarily…can anticipate receiving full compensation for every hour spent

litigating a claim." (internal quotations omitted)).  Hours are reasonable if "at the time rendered, [they] would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery…" *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982) (internal quotations omitted).

In making that determination, courts must look at the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, litigation tactics, and the trial itself.  As the courts have recognized, civil rights lawyers working without payment from their clients have little to gain from "inflating their fees," as the payoff is too uncertain. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  Accordingly, they should be fully compensated for taking the steps that they reasonably believe are necessary to *win* the case: "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Id*.

Counsels' sworn declarations and attached time records filed concurrently herewith document the attorney and legal assistant hours reasonably spent in the successful prosecution of this action. *See* Galipo Decl., Ex. 1; Valenzuela Decl., Ex. 1; and Gonzalez Decl., Ex. 1. These time records are *prima facie* evidence that counsels' hours were reasonable. *See Horsford v. Bd. Of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 396 (2005) ("[T]he verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous."). Plaintiffs' attorneys also have exercised billing judgment in several ways. Attorney hours that were duplicative, unnecessary, or administrative in nature were either not entered by attorneys during the initial timekeeping process or were reduced during the review of the billing records done for this Motion.

1    The burden shifts to Defendants to prove that any specific time is
2    unreasonable and "to point to the specific items challenged, with a sufficient
3    argument and citations to the evidence." *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins.*
4    *Guarantee Assn.*, 163 Cal. App. 4th 550, 564 (Cal. Ct. App. 2008).   Defendants
5    cannot meet that burden. To the contrary, the hours for which Plaintiffs' counsel
6    request compensation were reasonably necessary for the prosecution of Plaintiffs'
7    claims for approximately five years. Plaintiffs' counsel had an obligation to be
8    diligent and thorough. Excessive force cases are extremely difficult given the
9    inherent bias in favor of the police, especially in a case such as this where there was
10   damaging evidence. *Gregory v. Oliver*, 2003 WL 1860270, at *2 (N.D. Ill. Apr. 9,
11   2003); *Wiersta v. Heffernan*, 789 F.2d 968, 972 (1st Cir. 1986); *Wilson v. Union*
12   *Pacific R. Co.*, 56 F.3d 1226, 1231 (10th Cir. 1995); *Estate of Diaz v. City of*
13   *Anaheim*, 840 F.3d 592 (9th Cir. 2016).

14   Defendants' position was that the case had little value, as was reflected in
15   their arguments to the jury and their settlement posture. Thus, Plaintiffs' counsel
16   correctly anticipated that the case would have to be tried and took the steps to do so
17   successfully. That came at a heavy burden and with great risk. First, Plaintiffs bore
18   the burden of proof and persuasion. This required obtaining and meticulously
19   analyzing all the relevant documents and testimony, and extensive preparation for
20   trial. Over twenty-five depositions were conducted in this case.   Further, two
21   separate defense firms propounded significant discovery, there were multiple
22   discovery motions, a motion for sanctions was filed, and multiple dispositive
23   motions were filed by the defense, which were successfully opposed.   Second,
24   Plaintiffs' counsel retained a large time and economic commitment for this case.
25   Plaintiffs' counsel compensated the attorneys and staff at their firms throughout the
26   approximate five years that their offices litigated this case, and incurred costs,
27   including expert retention fees, without any interim payments from the Plaintiffs or
28   guarantee of success at trial.  Plaintiffs' counsels' careful review, organization, and

MOTION FOR ATTORNEYS' FEES

analysis of the video recordings, audio recordings, photographs, reports, and transcripts proved worthwhile for the successful result for Plaintiffs.

### B. Skill Necessary to Perform Proper Legal Services given the Complexity and Undesirability of the Case, and Risk of Non-Payment.

In general, successfully litigating police misconduct cases requires extensive experience and skill and an understanding of issues that are unique to civil rights victims as compared to general civil practice. Even experienced civil rights attorneys have difficulty overcoming the built-in bias favoring the police. This is particularly true in Nevada, as opposed to other states such as California. The favorable trial result in this case was the product of a tremendous amount of hard work and skill on the part of Plaintiffs' counsel in preparing and presenting this case at trial. This is especially true in light of the particular difficulty presented in this case, including evidence that Decedent had multiple guns on his person and allegedly pointed a gun at the involved officers and protestors. Despite all of this negative evidence, Plaintiffs' counsel achieved a successful result.

At Plaintiffs' counsel's first review of this case, they were aware of the difficulty, risk, and expense in taking this case on a contingency basis. Nevertheless, Plaintiffs' counsel, took on this case. Despite the difficult evidence Plaintiffs' counsel ultimately won a favorable verdict for Plaintiffs—a testament that truly difficult cases such as this require truly dedicated and highly skilled representation. To succeed, Plaintiffs' counsel had to conduct numerous depositions, review numerous discovery materials, oppose numerous motions (including multiple dispositive motions), retain, pay and consult with multiple experts, and spend almost two weeks away from the office at trial. Defendants vigorously defended this case. From the outset, Defendants contended that the officers did nothing wrong, Squeo did not violate Decedent's First Amendment Rights, the use of the beanbag was

1  reasonable, that the use of deadly force by the shooting officers was reasonable, that
2  Decedent was armed with multiple guns, that Decedent pointed a gun at the shooting
3  officers and that he posed a significant imminent threat to the involved officers and
4  protestors in the area. Defendants' trial arguments showed that they believed they
5  should receive a defense verdict. Thus, Plaintiffs' counsel had to litigate well
6  enough to win. "[A party] cannot litigate tenaciously and then be heard to complain
7  about the time necessarily spent by the plaintiff in response." *Serrano v. Unruh*, 32
8  Cal. 3d 621, 633 (1982).

9

10      **C. Counsel's Hourly Rates Are Reasonable Considering the Customary**
11          **Fee, Contingency Basis, Experience and Reputation, and Awards in**
12          **Similar Cases.**

13          Generally, the prevailing market rates in the relevant community in the forum
14  where the district court sits govern the reasonable hourly rate for computing the
15  lodestar amount. *See Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (quoting
16  *Blum*, 465 U.S. at 895); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454
17  (9th Cir. 2010). However, market rates outside of the district in which this court sits
18  are permitted if there is proof that local "[law] firms could not successfully have
19  provided the expert representation required to effectively represent litigants in this
20  matter." *Gates*, 987 F.2d at 1405 (concluding that the district court did not abuse its
21  discretion in awarding fees at San Francisco rates despite the forum being in
22  Sacramento because "Sacramento attorneys with adequate expertise were
23  unavailable."). "[P]laintiffs must only prove the unavailability of counsel within the
24  local forum in order to justify the use of outside counsel." *Barjon v. Dalton*, 132
25  F.3d 496, 501 (9th Cir. 1997) (cleaned up). Additionally, "*Gates* allows proof of
26  either unwillingness *or* inability due to lack of experience, expertise, or
27  specialization." *Barjon*, 132 F.3d at 501 (emphasis in original).

28

Here, Plaintiffs seek hourly rates consistent with the California rather than the Las Vegas legal community. This is because "[w]hen it comes to police excessive force cases, Mr. Galipo [Plaintiffs' lead trial counsel] is without question at the top of his field[,]" *Craig v. Cnty. of Orange*, No. SACV1700491CJCKESX, 2019 WL 12378994, at *2 (C.D. Cal. Sept. 5, 2019), and there are very few attorneys with experience in the field of civil rights police misconduct in the District of Nevada (Las Vegas) or the Las Vegas community and none with comparable skills and expertise to Mr. Galipo. (*See* "Ex. 13" to Galipo Decl. (Haddad Decl.) ¶ 21; "Ex. 14" to Galipo Decl. (Merin Decl.) at ¶ 46). On April 21, 2025, in the Eastern District case *Hurtado v. State of California*, Case No. 2:19-cv-02343-DAD-AC, Judge Dale Drozd granted Plaintiffs' counsel, including Mr. Galipo, hourly rates consistent with the Los Angeles rates rather than Sacramento legal community. ("Ex. 11" to Galipo Decl. at pages 6-8. Here, Mr. Galipo is asking for hourly rates consistent with the rates he has previously received in California, rather than the Nevada legal community.

In this case, as set forth in the Declaration of Rodolfo Gonzalez filed concurrently herewith, "[g]iven the complexities of 1983 cases in general, and this case specifically, it was agreed by Plaintiffs and local counsel that an attorney expert in litigating complex officer involved shooting cases in federal court, such as Mr. Galipo, was needed to successfully litigate this case." (See Gonzalez Decl. at ¶ 4).

Within the relevant community, the Court should take into account the "experience, skill and reputation of the [requesting] attorney." *Dang*, 422 F.3d at 813; *see Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007). "Affidavits of the plaintiffs' attorney…and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am.*, 896 F.2d at 407. "[C]ourts can also use survey data to evaluate the reasonableness of attorneys' rates." *Garcia v. Los Angeles Cnty.*

*Sheriff's Dep't*, No. CV 09-8943 MMM (SHX), 2015 WL 13646906, at *16 (C.D. Cal. Sept. 14, 2015) (citing *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 852 (8th Cir. 2002)); *McKibben v. McMahon*, 2019 WL 1109683, at *14 (C.D. Cal. Feb. 28, 2019)). Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence. *Gates*, 987 F.2d at 1405 (9th Cir. 1992). Congress expressly recognized that fees in federal civil rights cases should be comparable to those in complex federal civil litigation. *See City of Riverside v. Rivera*, 477 U.S. 561, 575-76 (1986) ("Congress made clear that it 'intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation.'" (citing S. Rep. No. 94-1011, at 6 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913)).

In determining what constitutes a reasonable fee in civil rights litigation, courts should consider the hourly rates that similarly skilled and experienced attorneys in private practice charge their paying clients. *Blum v. Stevenson*, 465 U.S. 886, 895 (1984); *see* Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Session, reprinted in 1976 U.S. Code Cong. & Ad. News 5908. Market rates may be established by declarations regarding prevailing fees and fee awards in other cases. *United Steelworkers v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). In this instance, counsel's requested hourly rates are fully supported by the declarations of Plaintiffs' counsel, Dale Galipo, Eric Valenzuela and Rodolfo Gonzalez, as well as the supporting declarations of various knowledgeable civil rights law practitioners.

Moreover, the Ninth Circuit has repeatedly held that "in determining the prevailing market rate a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2018); *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1045 (9th Cir. 2016) (reversing because "the court simply re-

invoked the 2015 rates and added a $30 enhancement, without discussion of why the 2015 rates are an appropriate anchor or why an increase in $30 is reasonable"); *Moreno*, 534 F.3d at 1115 ("If the lodestar leads to an hourly rate that is higher than past practice, the court must award that rate . . . ."); *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024-25 (2019) ("Examining prior fee awards to Holcomb and Beck in the district was not an acceptable substitute for considering the declarations submitted by Holcomb, and explaining why those declarations did or did not establish the prevailing hourly rate in the district."). Courts also appropriately recognize that rates, and inflation, increase over time. *Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. EDCV 07–1512 ABC (OPx), 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012) (approving as reasonable an approximate 10 percent increase between 2011 rates and 2012 rates and because "[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice").

Additionally, the Supreme Court in *Missouri v. Jenkins by Agyei*, 491 U.S. 274 (1989), recognized that compensation received several years after an attorney renders his or her services "is not equivalent to the same dollar amount received promptly as the legal services are performed, as would normally be the case with private billings." *Id.* at 283. Accordingly, "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of [§ 1988]." *Id.* at 284; *see also Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*, 483 U.S. 711, 716 (1987) ("In seeing fees for prevailing counsel, the courts have regularly recognized delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value.").

Thus, the Ninth Circuit "recognize[s] that district courts have discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at

current rather than historic rates in order to adjust for inflation and loss of the use of funds." *Gates*, 987 F.2d at 1406. The prevailing practice is to award the current requested rate for all work performed. *See e.g.*, *Zeigler v. Cnty. of San Luis Obispo*, No. CV179295MWFAFMX, 2023 WL 3432238, at *5 (C.D. Cal. Mar. 1, 2023) (awarding requested rates commensurate with current practice experience for work that commenced years prior); *French v. City of Los Angeles*, No. EDCV2000416JGBSPX, 2022 WL 2189649, at *1, 17-19 (C.D. Cal. May 10, 2022) (same); *Donastorg v. City of Ontario*, No. EDCV18992JGBSPX, 2021 WL 6103545, at *1, 8-9 (C.D. Cal. Sept. 23, 2021) (same).

### i.   Hourly Rate for Dale K. Galipo

With 36 years of experience, the majority of which was spent litigating civil rights cases, Mr. Galipo's requested hourly rate of $1,400 is well-within the reasonable range of billing rates for civil rights attorneys in Los Angeles with comparable skill and experience. Mr. Galipo graduated with a B.B.A. from the University of Michigan in 1981. (Galipo Decl. ¶ 3). He attended law school at UCLA from 1981 to 1984. (*Id.*). Since 1991, he has managed his own law firm specializing in major personal injury and wrongful death cases and criminal defense. His practice grew to specialize in serious police excessive force resulting in serious injury and death. (*Id.* ¶ 4).

In 2012, Mr. Galipo received the Defender of the Constitution Award from the Inland Empire Chamber of the Federal Bar Association. (*Id.* ¶ 5). In approximately the last eight years, Mr. Galipo prevailed in approximately thirty jury trials. Nearly all of the jury trials were civil rights cases. (*Id.* ¶ 18). In approximately the last thirteen years, Mr. Galipo has had approximately sixteen published opinions in civil rights cases and has argued numerous appellate cases before the Ninth Circuit. (*Id.* ¶ 16). In 2019, Mr. Galipo was elected to the American College of Trial Lawyers. (*Id.* ¶ 9). He was also elected to the Inner Circle of Advocates, which is

limited to one hundred members nationwide, representing some of the top plaintiff's attorneys in the country. (*Id.* ¶ 8). Further in 2019, Mr. Galipo was chosen by UCLA School of Law to give the Irving H. Green Memorial Lecture to students and faculty. (*Id.* ¶ 10). Past attorneys who have been honored with this recognition include Johnnie Cochran, Jr. (*Id.*). Mr. Galipo has also been invited to speak to the law students at UC Irvine and UCLA on several occasions. (*Id.* ¶ 14). In 2020, Mr. Galipo was recognized as both CAALA Trial Lawyer of the Year and CAOC Consumer Attorney of the Year. (*Id.* ¶ 11, 12).

Courts within the Central District of California have consistently recognized Mr. Galipo as one of the top civil rights attorneys in the area of police misconduct in Los Angeles. *See, e.g., Zelaya v. City of Los Angeles*, No. 2:20-CV-08382-ODW (MAAX), 2024 WL 3183882, at *3 (C.D. Cal. June 25, 2024) ("The Court agrees that Mr. Galipo is unquestionably at the top of his field and finds Mr. Galipo's requested rate [of $1,300] is appropriate given his 'experience, skill, and reputation.'"); *Valenzuela v. City of Anaheim*, No. SACV1700278CJCDFMX, 2023 WL 2249178, at *3 (C.D. Cal. Feb. 23, 2023) ("The Court found that a $1,200 hourly rate, although high, was reasonable for Mr. Galipo's work over the past three years, pointing to Mr. Galipo's strong reputation with the legal community, his continued consistent record of success with over $85 million in recovery in civil rights cases since 2019, and multiple courts that awarded him $1,100 hourly rates as early as 2020."); *Craig v. Cnty. of Orange*, Case No. SACV 17-00491-CJC (KESx), Dkt. 280, at 5-6 (awarding Mr. Galipo an hourly rate of $1,200 because "[w]hen it comes to police excessive force cases, Mr. Galipo continues to be without question at the top of his field."); *Donastorg v. City of Ontario*, Case No. EDCV 18-992 JGB (SPx), 2021 WL 6103545, at *8 (C.D. Cal. Sept. 23, 2021) ("The Court agrees with the courts that have recognized that, when it comes to police excessive force cases in Los Angeles, Mr. Galipo is without question at the top of his field.") (cleaned up). Mr. Galipo is considered to be one of the top civil rights attorneys in the state and

country. (Valenzuela Decl. ¶ 13). He has gone to trial and won more cases against the police for excessive force than any attorney in the country. (*Id*.). Accordingly, Mr. Galipo's requested hourly rate of **$1,400** is reasonable for an attorney with his experience, skill, expertise, and reputation. (Galipo Decl. ¶ 28; *see* Ex. 13 to Galipo Decl. (Haddad Decl.) at ¶¶ 22-23; Ex. 14 to Galipo Decl. (Merin Decl.) ¶ 46).

### ii. Hourly Rate for Associates at Law Offices of Dale K. Galipo

Mr. Valenzuela received his Juris Doctorate degree from Southern California Institute of Law in 2010 and was admitted to the California Bar in 2012. (Valenzuela Decl. ¶ 4). In 2008 Mr. Valenzuela joined the Law Offices of Dale K. Galipo, where he currently works as a senior associate attorney. (*Id.* ¶ 5). Since joining Mr. Galipo's firm, he has worked almost exclusively on 42 U.S.C § 1983 civil rights cases involving police excessive force. (*Id.*). Mr. Valenzuela was the senior associate attorney at Mr. Galipo's office assigned to this case and was responsible for the case's day-to-day management and trial preparation between September of 2020 and the present. (*Id.* ¶ 10). Mr. Valenzuela took several depositions in this case, argued several motions, including for sanctions and dispositive motions and also examined multiple witnesses during the trial. Over the past thirteen years as a civil rights attorney, Mr. Valenzuela has managed numerous civil rights cases that resulted in multi-million-dollar verdicts and settlements, he has argued multiple times before the Ninth Circuit Court of Appeals and has tried multiple cases as the first-chair attorney. (*Id.* ¶¶ 5, 8, 10). In May of 2022, Mr. Valenzuela was awarded an hourly rate of $700 for a case tried in October of 2021. (Ex. 2 to Valenzuela Decl. at p. 29 (*French* Order)). Taking into account Mr. Valenzuela's additional experience gained since that time, Mr. Valenzuela's requested hourly rate of **$950** is a reasonable rate for an attorney with his experience, skill, and expertise. (Galipo Decl. ¶ 31).

### iii. Hourly Rate for Rodolfo Gonzalez

Mr. Gonzalez is the founding principle of Gonzalez Law with over 13+ years of litigation experience. (Gonzalez Decl. at ¶ 3, 4). Rodolfo Gonzalez is an experienced trial attorney with more than a decade of legal practice. He earned his undergraduate degree from the University of California, Los Angeles, and his Juris Doctor from the William S. Boyd School of Law at the University of Nevada, Las Vegas. Prior to his legal career, Mr. Gonzalez served in the United States Navy, an experience that contributed to his professional discipline and work ethic.

Mr. Gonzalez has tried more than ten cases to verdict, securing multiple favorable jury verdicts on behalf of his clients (Gonzalez Decl. ¶ 7). His broader litigation record includes high-value resolutions totaling more than $10 million in cases involving contested liability cases with substantial factual and legal complexity. (*Id.* at ¶ 8). This depth of experience was directly relevant to, and materially contributed to, the effective and successful prosecution of this case. Based on his trial skills and his dedication to trying civil cases, Mr. Gonzalez mentors and assists younger lawyers in taking cases to trial. (*Id.* at ¶ 9).

Mr. Gonzalez's work in this matter encompassed all core aspects of complex civil rights litigation, including the initial investigation, drafting and review of pleadings, coordination with trial counsel, preparation for and attendance at hearings, analysis of extensive dispositive motion practice and supporting exhibits, trial preparation, and attendance throughout multiple days of jury trial. The time expended was necessary, efficient, and proportional to the demands of the case.

Mr. Gonzalez's current hourly rate of $950 is reasonable and well within the range charged by attorneys of comparable skill, experience, and professional standing who handle complex civil rights and high-stakes litigation. Given his extensive trial experience, history of favorable jury verdicts and substantial settlements, leadership roles in litigating cases, and demonstrated success in matters

involving significant factual and legal complexity, this rate is consistent with, and in many instances conservative relative to, prevailing market rates for similarly qualified counsel.

### D. Plaintiffs' Counsel Are Entitled to Fees and Costs for Litigating the Instant Motion

In addition to the attorneys' fees derived from legal work performed in preparing and litigating a case, Plaintiffs' counsels are entitled to attorneys' fees for their time spent establishing their right to attorneys' fees in the amount requested, and on all work anticipated in opposing any further post-trial motion filed by Defendants. *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) ("We, like every other court that has considered the question, have held that the time spent in establishing entitlement to an amount of fees awardable under section 1988 is compensable."); *see also Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3rd Cir. 1998); *Glass v. Pfeffer*, 849 F.2d 1261, 1266 (10th Cir. 1988); *Hernandez v. George*, 793 F.2d 264, 269 (10th Cir. 1986); *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir.1978) ("It would be inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee.").

Plaintiffs' counsel are also entitled to recover the reasonable litigation expenses incurred over the course of litigation. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorneys should recover reasonable out-of-pocket expenses of the type ordinarily billed to paying clients). The expenses for which Plaintiffs seek reimbursement are detailed in the Bill of Costs being filed concurrently herewith. These unreimbursed expenses were necessary to the litigation and of the sort normally billed to hourly-paying clients and are thus fully reimbursable. *See, e.g.*, *In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166, 1177-78 (S.D. Cal. 2007).

Plaintiffs' counsel will supplement and amend this instant Motion to include their hours spent on the anticipated reply brief, preparation for and appearance at the related hearing, and in opposing the post-trial motions filed by Defendants.

## IV.    A 2.0 LODESTAR ENHANCEMENT IS APPROPRIATE

The application of a 2.0 lodestar enhancement is justified in this case by the great risk counsel took that after hundreds of hours and many thousands of dollars, they would end up with no compensation for their work.  Such risk commands a significant multiplier. In this case, Plaintiffs prevailed on their First and Fourth Amendment claims and on their state law battery claim, which supports the granting of a multiplier under Ninth Circuit law.  "A district court generally has discretion to apply a multiplier to the attorney's fees calculation".  See *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997 (9th Cir. 2002); citing *In re Coordinated Pre-trial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 609 (9th Cir. 2002).

Risk enhancements reflect the attorney's risk of receiving no payment at all. That financial risk commands a premium in the legal marketplace for attorneys whose compensation is wholly dependent upon achieving success for their clients. Indeed, the risk of litigating the case and receiving no compensation if the case is lost is often the most significant lodestar enhancement factor. Unless risk is compensated, the purpose of the multiplier will not be fulfilled.  A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases. Here, Plaintiffs requested multiplier is justified based on the great risk Plaintiffs' counsel assumed in litigating this case on a contingency basis, the difficulty of the case, and based on counsels demonstrated skill. Counsel invested several hours of work

without any interim payments from Plaintiff and also risked costs paid out of pocket since the inception of this case in 2020. Many more hours and expenses promise to be put at risk based on multiple post-trial motions filed by the defense.

In light of the special difficulties presented in this case, the hard-fought litigation, and the public interest served by obtaining a verdict that brought justice to Plaintiffs for the Defendants' behavior, a multiplier of 2.0 is appropriate here. It is well-established that excessive force cases inure "a public benefit of deterring unconstitutional conduct by law enforcement officials." *Orr v. Brame*, 727 F. App'x 265, 269 (9th Cir. 2018) (holding that the district court abused its discretion where it reduced an attorney fee award and disregarded a long line of case law that fee awards have deterrent effects); citing *McCown v. City of Fontana*, 565 F.3d 1097, 1105 (9th Cir. 2009); *Morales v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 1996). Nevertheless, these cases are extremely difficult to win and require plaintiff's lawyers to take significant risks. In the legal marketplace, law firms simply do not commit thousands of hours of uncompensated time to such a highly risky case without the expectation that, if they are successful, they will be compensated for their risk with a fee that is significantly greater than if they had been paid hourly rates, win or lose. Thus, a multiplier is appropriate.

## V.   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court award attorneys' fees in the amount of **$1,445,625**. Plaintiffs also request that the Court award attorneys' fees for work performed in the litigation of the instant motion for attorney fees, including drafting the related reply and attending hearing on the motion for attorneys' fees, and for work performed on any post-trial motions filed by Defendants and the hours billed by the legal assistant ($8,990). The table below summarize the fees requested, including the name of each biller, years of practice if

an attorney, the hourly rate, hours claimed, and the total for that biller.  If the person is not an attorney, then the qualifying position of the biller is listed.

| Attorney/Biller | Yrs. Practice | Rate | Hours | Total |
|---|---|---|---|---|
| **Law Offices of Dale K. Galipo** | | | | |
| Dale K. Galipo | 36 | $1,400 | 632.3 | $885,220 |
| Eric Valenzuela | 13 | $950 | 425.3 | $404,035 |
| Leslie De Leon | Leg. Assist. | $200 | 44.95 | $8,990 |
| **Gonzalez Law** | | | | |
| Rodolfo Gonzalez | 13 | $950 | 164.6 | $156,370 |

| | | | Hours | Total |
|---|---|---|---|---|
| **Subtotal**: | | | 1,267.15 | $1,454,615 |
| 2.0 Multiplier: | | | | $1,454,615 |
| **TOTAL:** | | | | **$2,909,230** |

DATED: January 06, 2026                THE LAW OFFICES OF DALE K. GALIPO


                                By:    /s/ *Eric Valenzuela*
                                       Eric Valenzuela
                                       Attorneys for Plaintiffs

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Certificate of Service**

I hereby certify than on January 6, 2026, I electronically filed and served the foregoing **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR STATUTORY ATTORNEYS' FEES** with the Clerk of the Court for the United States District Court for the District of Nevada using the CM/ECF system.

By _____ */s/ Leslie De Leon*
                        Leslie De Leon