MCNUTT LAW FIRM, P.C.
Daniel R. McNutt, Esq., Bar No. 7815
Matthew C. Wolf, Esq., Bar No. 10801
11441 Allerton Park Drive, Suite 100
Las Vegas, Nevada 89135
Tel.: (702) 384-1170 / Fax.: (702) 384-5529
drm@mcnuttlawfirm.com
mcw@mcnuttlawfirm.com
mdh@mcnuttlawfirm.com
Counsel for *Defendant John Squeo*

MARQUIS AURBACH
Craig R. Anderson, Esq., Bar No. 6882
Andrew D. Yates, Esq., Bar No. 17016
10001 Park Run Drive
Las Vegas, Nevada 89145
Tel.: (702) 382-0711 / Fax: (702) 382-5816
canderson@maclaw.com
ayates@maclaw.com
Counsel for *Defendant Sergeant Fryman*

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| JEANNE LLERA, and JORGE L. GOMEZ, as the appointed co-special administrators of the estate of JORGE A. GOMEZ; JEANNE LLERA; and JORGE L. GOMEZ, <br><br> Plaintiffs, <br><br> v. <br><br> LAS VEGAS METROPOLITAN POLICE DEPARTMENT; RYAN FRYMAN; DAN EMERTON; VERNON FERGUSON; ANDREW LOCHER; JOHN SQUEO; and DOES 2-10, inclusive, <br><br> Defendants. | Case No.: 2:20-cv-01589-RFB-DJA <br><br><br> **Reply in Support of Joint Motion to Stay Execution of the Judgment** |

### I. INTRODUCTION.

Plaintiffs' Opposition rests on three incorrect premises: that Federal Rule of Civil Procedure 62(f) does not incorporate Nevada law, that it is uncertain whether the Las Vegas Metropolitan Police Department (Metro) could pay the judgment in full promptly, and that Nevada Rule of Civil Procedure 62(e) excludes officers sued in their individual capacities.

1    FRCP 62(f) expressly entitles judgment-debtors to the same stay of execution that the state

2    court would give when a judgment creates a lien on property under state law.  Plaintiffs do not

3    dispute that the judgment here becomes a lien upon recording, a ministerial act.  Instead, they argue

4    that *Vacation Village, Inc. v. Clark County* prohibits this Court from applying state law.  But *Va-*

5    *cation Village* addresses FRCP 62(d), not FRCP 62(f).  FRCP 62(f) incorporates state law.

6    Plaintiffs also argue that NRCP 62(e) applies only to officers sued in their official capacities.

7    The rule contains no such limitation.  It exempts any state officer from having to post a bond to stay

8    execution.  This is not an action in which an officer has been sued for their off-duty activities in

9    their private life.  Instead, Plaintiffs sued the Movants for "acting under color of law, within the

10   course and scope of their respective duties as police officers and with the complete authority and

11   ratification of their principal, Defendant LVMPD."[1]  Plaintiffs cannot sue the Movants for actions

12   taken under color of state law in the performance of their official duties while simultaneously deny-

13   ing them the procedural protections that Nevada law affords to state officers.  And because Metro

14   must indemnify the Movants, the capacity in which they were sued is functionally irrelevant.

15   Even setting aside Rule 62(f), the *Dillon* factors overwhelmingly support an unsecured stay.

16   Metro has immediate access to more than $53 million to satisfy the judgment, including $32.5

17   million in self-insurance funds and $20 million in excess liability coverage.  Plaintiffs offer no

18   evidence to rebut these facts.  Instead, they cite news articles about unrelated city budget issues and

19   tourism trends.  No court has ever denied an unsecured stay based on such speculation, and this

20   Court should not be the first.  Hence, this Court should grant an unsecured stay.

21   ## II.  LEGAL ARGUMENT.

22   **A.    The Movants Are Entitled to a Stay of Execution**.

23   **1.    *Rule 62(f) Entitles the Movants to an Unsecured Stay as a Matter of Right*.**

24   Fed. R. Civ. P. 62(f) provides that "[i]f a judgment is a lien on the judgment debtor's prop-

25   erty under the law of the state where the court is located, the judgment debtor is entitled to the same

26   stay of execution the state court would give."  That rule gives the judgment-debtor the same stay as

27

28   _____

[1]    First Am. Compl. (FAC) ¶ 14, Feb. 17, 2021, Dkt. 21.

1   would be granted had the action been maintained in state court.[2]   The rule has two requirements:

2   (1) that the judgment results in a lien on the judgment-debtor's property under state law, and (2)

3   that state law provides for a stay.[3]   Both requirements are met here.

4         As for the first prong, the judgment becomes a lien on property under Nev. Rev. Stat. §

5   17.150(2) upon recording the judgment, a mere ministerial act, as the Nevada Supreme Court has

6   concluded.  (Mot. 5:6–14, Dkt. 283, Dec. 23, 2025.)  Plaintiffs do not dispute that the first prong in

7   FRCP 62(f) is satisfied here.  (Opp'n 3:17–4:20, Dkt. 284, Jan. 6, 2026.)

8         Rule 62(f)'s second prong is satisfied here, too.  Plaintiffs sued the Movants for their actions

9   as police officers under the color of state law.  NRCP 62(e) exempts them from posting a bond:

10        When an appeal is taken by the State or by any county, city, town, or other polit-
          ical subdivision of the State, or an **officer** or agency thereof, and the operation or
11        enforcement of the judgment is stayed, no bond, obligation, or other security is
          required from the appellant.[4]
12

13  When read together with NRCP 62(d)(1), NRCP 62(e) grants the Movants an unsecured stay "as a

14  matter of right," as the Nevada Supreme Court held in *Clark Cnty. Off. of Coroner/Med. Exam'r v.*

15  *Las Vegas Rev.-J.*, 134 Nev. 174, 174, 415 P.3d 16, 17 (2018).

16        Plaintiffs incorrectly argue that NRCP 62(e) is a state procedural rule inapplicable in federal

17  court under *Vacation Vill., Inc. v. Clark Cnty., Nev*, 497 F.3d 902, 914 (9th Cir. 2007).  (Opp'n

18  3:17–4:20.)  But FRCP 62(f) expressly incorporates state law.  *Vacation Village* addresses Rule

19  62(d) instead of Rule 62(f).[5]   It held that FRCP 62(d) applied instead of NRS 37.170(1), which

20  prohibits the State of Nevada from appealing an eminent domain action without first depositing

21  "the full amount of the judgment" with the clerk.  *Vacation Village* is irrelevant to Rule 62(f).

22        Plaintiffs argue next that NRCP 62(e) applies only to officers sued in their official capaci-

23  ties.  Neither the plain language of NRCP 62(e) nor any Nevada precedent limits the rule to official-

24

---

25  [2]  *United States v. Maris*, No. 2:10-CV-1337-RCJ-RJJ, 2012 WL 1664209, at *2 (D. Nev. May
         11, 2012) (quoting Federal Practice and Procedure (Wright & Miller), 11 Fed. Prac. & Proc.
26       Civ. § 2907 (2d ed. 1995)).

27  [3]  *Hurley v. Atl. City Police Dep't*, 944 F. Supp. 371, 372 (D.N.J. 1996); *see also Bain v. Tri-Cnty.*
         *Metro. Transp. Dist.*, 1994 WL 544385, at *1 (D. Or. Sept. 29, 1994).

28  [4]  Nev. R. Civ. P. 62(e) (emphasis added).

    [5]  *Vacation Vill.*, 497 F.3d at 913–14.

1    capacity suits. "Interpretation of Nevada's Rules of Civil Procedure begins with the text."[6]  Courts

2    enforce the rules based on their plain and unambiguous language.[7]  State police officers sued, as

3    here, for "acting under color of law, within the course and scope of their respective duties as police

4    officers and with the complete authority and ratification of their principal, Defendant LVMPD,"[8]

5    are "officers" under NRCP 62(e).  Plaintiffs cannot have it both ways—suing the Movants for ac-

6    tions taken under the color of state law within the course and scope of their public employment, yet

7    denying them the procedural protections afforded to state police officers.

8         Plaintiffs improperly seek to rewrite NRCP 62(e) by inserting the phrase "in their official

9    capacities" into the rule.  Under the cannons of statutory construction, which apply when interpret-

10   ing the Nevada Rules of Civil Procedure,[9] this Court has a "duty to refrain from reading into the

11   [rule] a phrase that [the Nevada Supreme Court] has left out."[10]  Thus, this Court should reject

12   Plaintiffs' effort to rewrite the rule under the guise of construing it.

13        The authorities cited by Plaintiffs undermine their interpretation of NRCP 62(e).  Plaintiffs

14   cite *Hamlin v. Charter Twp. of Flint*, 181 F.R.D. 348 (E.D. Mich. 1998), which rejected the argu-

15   ment that FRCP 62(d) does not require a bond if the prevailing party also appeals the judgment.

16   *Hamlin* said, "There is nothing in the Rule to suggest that this requirement is automatically sus-

17   pended simply because the prevailing party also appeals the judgment."  *Id.* at 352.  So too here:

18   no language in NRCP 62(e) limits "officers" to official-capacity suits.

19        The omission of language limiting NRCP 62(e) to official-capacity suits was no doubt in-

20   tentional.  Since 1911, Nev. Rev. Stat. § 20.040 has created an independent right to an unsecured

21   stay separate from the one afforded under NRCP 62(e).  NRS 20.040(1) refers to an officer appear-

22   ing "in his or her official capacity."[11]  The statute predates the Nevada Supreme Court's adoption

23

24   [6]  *Aguilar v. Lucky Cab Co.*, 140 Nev. 1, 3, 540 P.3d 1064, 1066 (2024).

25   [7]  *See, e.g.*, *Harris v. State*, 138 Nev. 390, 510 P.3d 802, 809 (2022).
     [8]  FAC ¶ 14, Feb. 17, 2021, Dkt. 21.

26   [9]  *See, e.g.*, *McNamee v. Dist. Ct.*, 135 Nev. 392, 395, 450 P.3d 906, 909 (2019).
     [10]  *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993).

27   [11]  NRS 20.040(1) ("In any action or proceeding before any court or other tribunal in this State,
28   wherein the State of Nevada or any county, city or town of this State, or any officer thereof in

of NRCP 62, which became effective on January 1, 1953.[12]  "Had [the Nevada Supreme Court] intended to restrict [NRCP 62(e)] to" official-capacity suits, "it presumably would have done so expressly as" did the legislature decades earlier in NRS 20.040(1).[13]

Nevada's discretionary-immunity statute confirms that the unqualified term "officers" in NRCP 62(e) includes state police officers sued in their individual capacities for actions taken under the color of state law in the course and scope of their job—precisely what FAC ¶ 14 alleges.  The statute, codified in NRS 41.032, reads as follows:

> Except as provided in NRS 278.0233 no action may be brought under NRS 41.031 or against an immune contractor or an officer or employee of the State or any of its agencies or political subdivisions which is:
>
> 1. Based upon an act or omission of an officer, employee or immune contractor, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation is valid, if the statute or regulation has not been declared invalid by a court of competent jurisdiction; or
>
> 2. Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused.

NRS 41.032 puts no limit on the term "officers."  The statute has been applied to officers sued in their individual capacities.[14]  It would be illogical for the unqualified term "officers" in NRS 41.032

---

his or her official capacity, is a party plaintiff or defendant, no bond, undertaking or security shall be required of the State, county, city or town, or such officer in his or her official capacity, but on complying with the other provisions of law the State, county, city or town, or officer thereof, acting as aforesaid, shall have the same rights, remedies and benefits as though such bond, undertaking or security were given and approved as required by law."). NRS 20.040(1) cannot alter or limit the right to an unsecured stay afforded in NRCP 62(e) because the Nevada legislature cannot enact statutes abrogating "an existing rule of procedure that [the Nevada Supreme Court] prescribed under its inherent authority to regulate the judicial process." *Lyft, Inc. v. Dist. Ct.*, 137 Nev. 832, 840, 501 P.3d 994, 1002 (2021).

[12] The credits to NRCP 62 on Westlaw identify January 1, 1953, as the rule's effective date. The Nevada Supreme Court "adopted its Rules of Civil Procedure in 1952 ...." *Matter of Est. of Sarge*, 134 Nev. 866, 869, 432 P.3d 718, 721 (2018).

[13] *Russello v. United States*, 464 U.S. 16, 23 (1983).

[14] *See, e.g., Nelson v. Willden*, No. 2:13-CV-00050-GMN, 2015 WL 4937939, at *3 (D. Nev. Aug. 19, 2015) (granting discretionary immunity to defendants sued in their individual capacities); *see also Licari v. Hughes*, No. 2:20-CV-02114-GMN-VCF, 2021 WL 2670698, at *5 (D. Nev. June 29, 2021) (same); *Scafidi v. Las Vegas Metro. Police Dep't*, 966 F.3d 960, 965 (9th Cir. 2020) ("A police officer's decision to arrest and detain is a discretionary act generally covered by § 41.032.").

1    to include officers sued in their individual capacities but not in NRCP 62(e).

2        The Nevada Supreme Court's reference to official-capacity suits in some procedural rules

3 but not in NRCP 62(e) confirms the broad scope of NRCP 62(e).  "'Nevada follows the maxim

4 "expressio unius est exclusio alterius," the expression of one thing is the exclusion of another.'

5 Additionally, 'Nevada law also provides that omissions of subject matters from statutory provisions

6 are presumed to have been intentional.'"[15]  The Nevada Supreme Court expressly referenced offi-

7 cial capacity when it drafted NRCP 4.2(d)(2), 12(a)(2)(C), 17(d), and 25(d).  Had it intended to

8 limit NRCP 62(e) to official-capacity suits, it would have used similar language.

9       "Nevada's Rules of Civil Procedure are subject to the same rules of interpretation as stat-

10 utes."[16]  Thus, as it must when construing statutes, this Court "must give effect to, not nullify, [the

11 Nevada Supreme Court's] choice to include limiting language in some [of the Nevada Rules of

12 Civil Procedure] but not others ...."[17]  The Nevada Supreme Court's decision to reference official

13 capacity in NRCP 4.2(d)(2), 12(a)(2)(C), 17(d), and 25(d) but not in NRCP 62(e) is "presumed to

14 have been intentional."[18]  This analysis leads to only one conclusion: like the unqualified term

15 "officers" in NRS 41.032, the same term in NRCP 62(e) applies to all state officers regardless of

16 the capacity in which they are sued—especially when they are sued, as here, under the color of state

17 law for actions take in the course and scope of their public employment.

18        In any event, Metro's indemnification obligation makes capacity irrelevant.  Metro has a

19 legal obligation to indemnify the Movants under NRS 41.0349 because the jury did not award pu-

20 nitive damages.  Metro's commitment to honor that legal obligation is memorialized in paragraph

21 3 of Bernadine Welsh's declaration attached to the Motion as exhibit C.  (Dkt. 283-3.)  Amid

22 Metro's indemnification obligation, the capacity in which the Movants were sued is irrelevant.  In

---

[15] *Bolden v. State*, 139 Nev. 448, 455, 538 P.3d 1161, 1168 (Nev. App. 2023) (quoting *State v. Javier C.*, 128 Nev. 536, 541, 289 P.3d 1194, 1197 (2012); *Dept. of Tax'n v. DaimlerChrysler Servs. N. Am., LLC*, 121 Nev. 541, 548, 119 P.3d 135, 139 (2005)) (internal citations omitted).

[16] *Barbara Ann Hollier Tr. v. Shack*, 131 Nev. 582, 588, 356 P.3d 1085, 1089 (2015) (quoting *Vanguard Piping v. Dist. Ct.*, 129 Nev. 602, 607, 309 P.3d 1017, 1020 (2013)).

[17] *Gallardo By & Through Vassallo v. Marstiller*, 596 U.S. 420, 431 (2022).

[18] *Dep't of Tax'n v. DaimlerChrysler Servs. N. Am., LLC*, 121 Nev. 541, 548, 119 P.3d 135, 139 (2005); *see also Diamond v. Swick*, 117 Nev. 671, 676–77, 28 P.3d 1087, 1090 (2001).

terms of who will pay the judgment, this action is indistinguishable from an official-capacity suit in which the State of Nevada or a political subdivision is liable for the judgment. The Nevada Supreme Court would apply NRCP 62(e) under these circumstances.

In short, FRCP 62(f) entitles the Movants to an unsecured stay as a matter of right. But should it disagree, this Court should certify to the Nevada Supreme Court the question of whether NRCP 62(e) is limited to official-capacity suits and grant an unsecured stay pending the answer.

### 2. *The Four Factors Entitle the Movants to a Stay of Execution*.

Even if this Court denies an unsecured stay under FRCP 62(f), the Movants are entitled to a stay under the traditional four-factor test. (Mot. 4:2–8; 6:17–9:12.) Plaintiffs do not address those factors in their Opposition. (Dkt. 284.)

### B. The *Dillon* Factors Entitle the Movants to an Unsecured Stay.

This Court need not reach the *Dillon* factors for an unsecured stay because the Movants are entitled to one as a matter of right under Rule 62(f). But in any event, the *Dillon* factors overwhelmingly support granting the Movants an unsecured stay, as shown below.

### 1. *Collection Will Be Simple and Prompt*.

If the judgment is not modified, reversed, or vacated, Metro will pay it in full, along with all fees, costs, and interest, within thirty days of a final resolution. (Mot. 9:17–22; Welsh Decl. ¶ 8, Ex. C to Mot., Dkt. 283-3.) Plaintiffs respond with speculation that the appropriation of funds would need to be approved by the appropriate city board, that a request would likely need to be submitted several days or weeks before the board meets, and that the board would then have to approve the payment. (Opp'n 5:25–6:2.) Those assertions are unsupported by any evidence in the record. Plaintiffs conflate routine administrative steps with complex and challenging collections. They present nothing to rebut Metro's commitment to pay the judgment in full within thirty days. Thus, this *Dillon* factor strongly favors granting an unsecured stay.

### 2. *The Availability of Sufficient Funds Is Beyond Question or Debate*.

The record establishes beyond debate that Metro has immediate access to more than $53 million in funds available to satisfy the judgment. That figure is more than eight times the $6.5 million judgment, even before accounting for the mandatory $2.3 million reduction required by

1    NRS 41.035.  (Mot. 11:3–18; Welsh Decl. ¶¶ 4–17.)  Metro has approximately $32.5 million in its

2    self-insurance fund and $20 million in excess liability insurance coverage.  The Welsh declaration

3    confirms that the entirety of this coverage is fully available to satisfy the judgment.  Plaintiffs offer

4    no evidence rebutting these facts.  (Opp'n 6:17–7:15.)  Instead, they cite dated news articles about

5    the City of Las Vegas's debts and tourism trends.  (Opp'n 7 n.2.)  But Metro is not the City of Las

6    Vegas.  And no court has ever denied an unsecured stay under *Dillon* based on the state of the local

7    economy.  This Court should decline Plaintiffs' invitation to be the first.

8           Plaintiffs also rely on inapposite cases.  *Hardesty v. Sacramento Metro. Air Quality Mgmt.*

9    *Dist.*, 2019 WL 2715616, at *1 (E.D. Cal. June 28, 2019) involves a judgment exceeding $100

10   million.  Sacramento County provided no "evidence of insurance coverage or self-insurance, nor

11   has it shown it has such a large discretionary budget that it is certain to be able to pay the judgment

12   ...."  *Id.* at *4 (internal citation omitted).  In contrast, the Welsh declaration demonstrates Metro's

13   ability to pay with certainty.  "LVMPD currently has approximately $32.5 million in the 'Self-

14   Insurance Fund' and has more than sufficient assets to pay the outstanding Judgment in this case."

15   (*Id.* ¶ 7.)  Additionally, Metro has $20 million in excess insurance, and "[t]he entirety of the excess

16   coverage is fully available to cover the outstanding Judgement in this case."  (*Id.* ¶ 11.)

17          In *Cotton ex rel. McClure v. City of Eureka, Cal.*, 860 F. Supp. 2d 999, 1028 (N.D. Cal.

18   2012), the declarations submitted to stay execution did not state that available insurance "funds will

19   unconditionally satisfy the judgment in this action."  In contrast, the Welsh declaration establishes

20   beyond doubt that Metro has immediate access to funds to satisfy the judgment unconditionally

21   within 30 days.  Additionally, the *Cotton* motion failed to address the *Dillon* factors beyond the

22   ability to pay the judgment.[19]  The Motion addresses every *Dillon* factor.

23          Bonding the judgment would be a total waste of public money, given the certainty of

24   Metro's ability to pay the judgment promptly.  "[O]btaining a bond that secures a money judgment

25   can require the principal to post 100% collateral."  (Ex. C to Mot., Welsh Decl. ¶ 16, Dkt. 283-3.)

26   Given Metro's demonstrated ability to pay promptly, such an expenditure serves no protective

27

28   [19]   *Cotton*, 860 F. Supp. 2d at 1028–29.

1    purpose.  For those reasons, *Dillon* strongly favors granting an unsecured stay.

2    **C.    Alternatively, this Court Should Reduce the Supersedeas Bond Amount**.

3           If it denies an unsecured stay, this Court should allow the Movants to post a supersedeas

4    bond equal to no more than 50% of the judgment, after deducting the $2.3 million disallowed under

5    NRS 41.035.   In response, Plaintiffs argue that the existence of insurance proceeds somehow

6    weighs against reducing the bond amount.  (Opp'n 8:19–20 ("There is no reason why an insured

7    defendant or an insurance company should be excused from posting security.").)  The Movants are

8    unaware of—and Plaintiffs do not cite—a case that has required a full supersedeas bond based on

9    the existence of insurance proceeds sufficient to satisfy the judgment.  Instead, *Hardesty v. Sacra-*

10   *mento Metro. Air Quality Mgmt. Dist.*, 2019 WL 2715616, at *5 (E.D. Cal. June 28, 2019) reduced

11   the bond amount by fifty percent despite the judgment exceeding $100 million and Sacramento

12   County's failure to present the type of convincing evidence offered here.

13                                    **III.CONCLUSION**.

14          The Movants are entitled to an unsecured stay under FRCP 62(f) as a matter of right.  The

15   four-factor test and the *Dillon* factors independently support the same result.  Plaintiffs will suffer

16   no prejudice from a brief delay, while the Movants face the prospect of unrecoverable loss if exe-

17   cution proceeds before final resolution.  Thus, this Court should (1) stay execution without requir-

18   ing a supersedeas bond until (a) thirty-one days after this Court resolves the post-judgment motions,

19   should the Movants elect not to appeal, or (b) the final resolution of any appeal; or (2) in the alter-

20   native, reduce the required bond amount to fifty percent or less, after making the adjustment re-

21   quired by NRS 41.035.

22   Dated January 13, 2026.                          Dated January 13, 2026.

23   MCNUTT LAW FIRM. P.C.                            MARQUIS AURBACH COFFING

24   */s/ Daniel McNutt*                              */s/ Craig Anderson*

25   Daniel R. McNutt, Esq.                           Craig R. Anderson, Esq.
     Matthew C. Wolf, Esq.                            10001 Park Run Drive

26   11441 Allerton Park Drive, Suite # 100           Las Vegas, Nevada 89145
     Las Vegas, Nevada 89135                          canderson@maclaw.com

27   drm@mcnuttlawfirm.com                            *Counsel for LVMPD Defendants*
     mcw@mcnuttlawfirm.com

28   *Counsel for Defendant Squeo*

**CERTIFICATE OF SERVICE**

On January 13, 2026, the undersigned served a true and correct copy of the **Reply in Support of Joint Motion to Stay Execution of the Judgment** via electronic mail through the United States District Court's CM/ECF system to all persons registered to receive electronic service.

*/s/ Lisa Heller*
An Employee of McNutt Law Firm, P.C.